**GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellant,**

v.

**Gerturdis RODRIGUEZ, et al., Appellees.**

**No. C2963.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 24, 1982.
Rehearing Denied July 15, 1982.

Chris Pappas, Wycoff, Russell, Dunn & Frazier, Houston, for appellant.

Travis Johnson, White & Johnson, John K. George, Houston, for appellees.

Before MILLER, MORSE and JAMES, JJ.

MILLER, Justice.

Appeal arises from a judgment of the trial court awarding appellee benefits from an accidental death provision in a life insurance policy, attorney's fees and a statutory penalty of 12%. We find no error in the judgment below, save the source of an award for attorney's fees, and we affirm as modified herein.

On or about July 5, 1978, Juan Rodriguez, the insured, died as a result of injuries received from a gunshot wound. At the time of his death, Juan Rodriguez was the recipient of a group life insurance policy with appellant as a result of his employment by Southwestern Bell Telephone Company. Appellee, the mother of the deceased-insured, filed a claim with appellant as a result of her designation as primary beneficiary of her son's policy, and made a formal demand for the payment of all benefits. Shortly thereafter, Theresa Rodriguez, the wife of the deceased-insured, filed a similar claim with appellant, asserting her community property interest in the benefits. Faced with these conflicting claims, appellant filed an Original Petition for Interpleader and Declaratory Relief and deposited approximately $34,000.00 into the registry of the court, which sum represented the basic and supplemental group life insurance proceeds. This amount did not include the policy proceeds under the accidental death provision.

Prior to the filing of the interpleader action, both appellee and Theresa Rodriguez made additional claims for the accidental death benefits in the amount of $17,000.00. These claims for accidental death benefits were also included in their answers to the interpleader and their counter and cross-claims. Appellant denied appellee's and Theresa Rodriguez's rights to the accidental death benefits, asserting that the insured did not die by accidental means, and refus-

ed to place the $17,000.00 in the registry of the court with the other proceeds from the policy.

Immediately before going to trial, Theresa Rodriguez abandoned her claim to all insurance benefits and nonsuited both appellant and appellee. The trial court thereby realigned the parties, making appellee plaintiff and appellant defendant. At trial the jury found that Juan Rodriguez died through accidental means as required by the insurance policy and provided by Texas law. A hearing was then held before the court, which made a determination of attorney's fees and assessed a 12% penalty against appellant pursuant to Article 3.62 of the Texas Insurance Code. Appellant now brings this appeal claiming error in the jury finding, in the award of attorney fees, and in the assessment of the penalty.

■ Appellant raises eleven points of error on appeal which can be divided into the three issues alluded to above. First (covering points of error one, two and three), appellant complains of the choice of law standard used by the trial court to determine the insurer's accidental death and the sufficiency of the evidence to support the same. (Point of error seven, concerning the correct choice of law as to the 12% penalty, will also be determined here). Appellant maintains the trial court erred in applying the Texas law standard for in determining whether an insured's death was by accidental means. Appellant asserts, instead, the Missouri standard was the correct choice of law. Additionally, appellant maintains the evidence was insufficient to support a finding of death by accidental means regardless of the standard applied.

Appellant's argument that Missouri law controls the standard for determining death by accidental means is based on the situs of the insurance contract. The insurance contract reveals Southwestern Bell initially filed an application for the group policy with appellant in St. Louis, Missouri. The original group policy, made effective on February 1, 1957, was signed St. Louis. All subsequent amendments to the group policy, including the May, 1967 provision under which the insured was covered, were issued and accepted in St. Louis. Therefore, appellant asserts Missouri law applies to a contract signed and entered into in Missouri because "(t)he effect of a contract (of insurance) is to be determined by the law intended by the parties to control, and in the absence of a contrary manifestation, the presumption is that the parties contract with reference to where the contract was made." *Austin Building Co. v. National Union Fire Ins. Co.,* 432 S.W.2d 697, 701 (Tex.1968); *Fidelity Mutual Life Ass'n v. Harris,* 57 S.W. 635 (Tex.1900).

We disagree. We believe the trial court was correct in holding Texas law controls this case and in applying the Texas standard set out in *Republic National Life Ins. Co. v. Heyward,* 536 S.W.2d 549 (Tex.1976). The record reveals that Juan Rodriguez was covered by the group insurance policy as of May 1, 1974. The record also reveals through an in-court stipulation that appellant was actively engaged in the insurance business in Texas *prior to* that same May 1. In fact, as a result of the coverage provided Southwestern Bell employees in Texas by the 1957 group policy, there is an indication appellant had been engaged in business in this State since the 1950's. It is uncontradicted that the insured was a resident of Texas, worked in Texas, and was covered the entire time by an insurance policy written for the benefit of Southwestern Bell employees in Texas. Under these facts and circumstances, we believe this is a situation where Article 21.42, Tex.Ins.Code Ann. (Vernon 1981) clearly applies. That article provides:

Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this

State, or at the home office of the company or corporation issuing the same.

Therefore, the trial court was correct in applying the Texas standard for determining death by accidental means.

The cases relied on by appellant are distinguishable from the facts of this case. Appellant cites *Austin Building Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697 (Tex.1968), for the proposition that Article 21.42 does not have extra-territorial effect, and that the law of the state where a contract was entered into governs the interpretation of the contract. *Austin Building*, however, involved a situation where there was no evidence the insurance company was actively engaged in business in Texas. There, the policy was written in Kansas, the insured property was located in Kansas and the loss occurred in Kansas. The only connection with this State was the policy holder's residence in Texas. Therefore, the Supreme Court correctly held Article 21.42 did not apply under the facts of that case.

The case of *Howell v. American Live Stock Ins. Co.*, 483 F.2d 1354 (5th Cir.1973), also cited by appellant, involved an insurance policy on a thoroughbred race horse in New Mexico. The Fifth Circuit correctly held Article 21.42 did not apply where the contract of insurance was made and executed in New Mexico, and the horse was kept and died on the New Mexican farm owned by the plaintiff, a Texas resident. Even though the insurance company in *Howell* did other business in Texas, the court held Texas law did not apply because the contract in question was not made in the course of the instate business. *Id.* at 1359. In the instant situation, however, appellant's instate business was directly related to the contract in question; appellant was in the business of insuring worker's in Texas for accidents occurring in Texas. Article 21.42 therefore applies to this case and the court was correct in applying a Texas standard in the trial. *Locomotive Eng. & Cond. Mut. Prot. Ass'n v. Bush*, 576 S.W.2d 887 (Tex.Civ.App.—Tyler 1979, no writ). *See: John Hancock Mutual Life Ins. Co. v. Schroder*, 349 F.2d 406 (5th Cir.1965), where the court held Texas law applied to a group life insurance contract written for the benefit of Texas employees but made and executed in Florida between a Florida based employer and a Massachusetts insurance company.

■ Since we agree with the trial court that Texas law governs this case, the next question is whether the evidence was sufficient to support the jury's finding that the insured died solely through accidental means. The correct standard, as used by the trial court in its special issue to the jury, is found in *Republic Nat. Life Ins. Co. v. Heyward*, 536 S.W.2d 549 (Tex.1976), which held:

> ... injuries are "accidental" and within the coverage of an insurance policy—whether the policy speaks in terms of "accidental injuries" or "injuries effected through accidental means"—if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury.

*Id.* at 557; *Kentucky Central Life Ins. Co. v. Fannin*, 575 S.W.2d 76, 80 (Tex.Civ.App.—Amarillo 1978, no writ). The Supreme Court further held in *Republic Nat. Life* that even where an insured's injuries are caused by the intentional acts of another, the injuries will be considered as accidental under an insurance policy if "from the insured's viewpoint his conduct was not such as to cause him to reasonably believe that it would result in his injury." 536 S.W.2d 557.

The evidence at trial revealed the insured was killed in the late evening hours of July 5, 1978. Earlier that night the insured attended a family party in south Houston. After the party, the insured left with his two brothers-in-law, Raymond and Joe Soto, to play pool and drink beer. It is uncertain the amount of beer consumed by the insured and the others, but there was no evidence the men were intoxicated. At approximately 11:30 p.m. the three men went

to an apartment occupied by Ronnie Siros and Donald Varna. The "purpose" of this visit was to determine why Siros and Varna were bothering Joe Soto's girlfriend. The testimony of the Sotos revealed the insured did not know where the three men were going prior to the shooting.

The evidence at this point becomes controverted, although certain facts are consistent throughout the different testimonies. It appears that Joe and Raymond Soto approached the apartment with the insured walking behind them. Joe Soto knocked on the door several times, and reportedly there was yelling and the sound of breaking glass. While there is a conflict in the evidence as to which shot hit Rodriguez, and whether or not he was running at the time, the insured was killed by a gunshot from inside the apartment. The occupants testified they believed their apartment was being broken into and that they shot in self-defense.

After considering the evidence in support of the jury's finding, we believe there was sufficient evidence to support a determination of accidental death under the *Republic Nat. Life* standard. *See: "No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361, 367 (1960). The testimony revealed the insured did not know where he was going and that he wanted to leave immediately prior to the shooting. There was no evidence to indicate the insured was causing any trouble before being shot. It appears the insured merely had the misfortune to find himself in the middle of a misunderstanding with consequences he did not anticipate. Clearly, there was sufficient evidence to support a finding of accidental death under the Texas standard set out in *Republic Nat. Life.* Appellant's points of error one, two, three and seven are overruled.

■ In its fourth, fifth and sixth points of error appellant complains of the court's award of attorney's fees for the interpleader action. As mentioned above, appellant originally filed the interpleader action as a result of the conflicting claims of Theresa Rodriguez and appellee. Theresa Rodriguez

nonsuited appellant and appellee, and the court realigned the parties for the action concerning accidental benefits. In its final judgment, the trial court ordered appellant to receive and recover $660.00 from Theresa Rodriguez as "attorney's fees for filing and legal work done in furtherance of the Interpleader Action." Appellant complains that the evidence at the hearing on attorney's fees supported a fee of $1440.00 and that it is entitled to that amount paid out of the interpleaded funds.

At the hearing the attorney for appellant testified he spent approximately 24 hours of time on the interpleader suit, which, at an hourly rate of $60.00, would amount to $1440.00 of reasonable fees. The court, however, determined that the majority of appellant's attorney's work was connected with defending the claim for accidental benefits and was not associated with bringing the interpleader action. Therefore, the court, in its discretion, correctly held that appellant's attorney deserved $660.00 in attorney's fees for the interpleader suit.

We disagree, however, with the court's determination that appellant's attorney's fees should be awarded against Theresa Rodriguez. While case law can be found to support either argument, we believe the overall weight of authority supports appellant's proposition that an innocent stakeholder in an interpleader action is entitled to have its attorney's fees paid out of the impleaded funds. *United States v. Ray Thomas Gravel Co.,* 380 S.W.2d 576 (Tex. 1964); *Fox v. Smith,* 531 S.W.2d 654 (Tex. Civ.App.—Waco 1975, writ ref'd n.r.e.). Otherwise, the stakeholder would be at the mercy of the possibly judgment-proof party who lost the interpleader action.

Appellee disagrees, stating that the court was correct in its determination of attorney's fees because the wrongful party (Theresa Rodriguez) who made the interpleader action necessary should be liable for the expenses caused by the action. At the time of the filing of the interpleader action, however, appellant was presented with two possibly valid claims. Although appellee was named beneficiary, Theresa Rodriguez

demanded her community share as wife. In her letter demanding payment of benefits appellee commented on the possible claim of Theresa to community property proceeds from the benefits. Faced with these conflicting claims, appellant was correct in filing the interpleader action and deserved to have the $660.00 in attorney fees paid out of the impleader amount. *Ray Thomas Gravel, supra; Fox, supra.* Therefore, we modify the judgment to tax attorney's fees against the impleaded funds.

■ Finally, appellant complains of the trial court's awarding attorney's fees and 12% penalty in favor of appellee under Article 3.62, Tex.Ins.Code (1981). Initially, appellant claims of court error in holding that demand for payment of accidental death benefits had been made more than thirty days prior to the assertion of the claim at trial by appellee. During trial, however, while discussing Article 3.62, the attorney for appellant admitted there was "no doubt they have proven demand." In addition, while appellee's initial demand letter to appellant did not specifically ask for payment of accidental benefits, appellee's attorney testified that demand for accidental benefits was made through other correspondence and communications with appellant, all conducted more than 30 days prior to the filing of appellee's counterclaim. *See: Scott v. National Bankers Life Ins. Co.,* 253 S.W.2d 485 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.), and *Republic Bankers Life Ins. Co. v. Gillard,* 496 S.W.2d 231 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.), where Texas courts have held demand for benefits may be oral. We believe the evidence is sufficient to support adequate demand more than 30 days prior to suit as required by Article 3.62.

■ Lastly, appellant contends the award of attorney's fees and 12% penalty was in error because there was no affirmative showing by appellee that she sustained her burden of proof of loss in compliance with the terms of the insurance policy. Appellant, however, did not raise an issue of proof of loss in its pleadings but waited until appellee rested her case at trial. Generally, where an insurance contract expressly requires proof of loss, as here, a claimant's timely compliance with that requirement is a condition precedent to recovery. *United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.,* 464 S.W.2d 353 (Tex.1971). An insurer can waive the proof of loss requirement, however, if the insurer goes forward within in the time period of filing the proof of loss claim and denies coverage. *North River Ins. Co. v. Pomerantz,* 492 S.W.2d 312 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). Even where the time for filing the proof of loss claim has passed, courts have held an insurer's knowledge of the loss and its denial of benefits constitutes a waiver of such requirements. *Texas Farm Bureau Mutual Ins. Co. v. Carnes,* 416 S.W.2d 863 (Tex.Civ.App.—Corpus Christi 1967, no writ); *Anchor Casualty Co. v. Bowers,* 385 S.W.2d 568 (Tex.Civ.App.—Houston 1964), *rev'd on other grounds,* 393 S.W.2d 168 (Tex.1965).

In addition, Rule 93(m) of the Texas Rules of Civil Procedure requires that a claim of no notice or no proof of loss must be specifically pled and verified. Appellant failed to comply with the requirements of Rule 93(m). In *Home Ins. Co. of New York v. Dacus,* 239 S.W.2d 182 (Tex.Civ.App.—Texarkana 1951, no writ), the insurer raised an issue of inadequate proof of loss for the first time in a motion for a directed verdict. The court upheld the trial court's denial of the motion because the insurer had failed to earlier raise the issue by verified pleadings, so the filing of adequate proof of loss would be presumed. *See also: City of Houston v. Riggins,* 568 S.W.2d 188 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Therefore, the trial court did not err in awarding attorney's fees and 12% penalty because the demand and proof of loss provisions of the Insurance Code and the contract in question were met. Appellant's points of error eight, nine, ten and eleven are overruled.

Judgment affirmed as modified.