**PARK CITIES LIMITED PARTNERSHIP d/b/a Park Cities Ford, Appellant**

v.

**TRANSPO FUNDING CORPORATION, Appellee.**

No. 05–03–00615–CV.

Court of Appeals of Texas, Dallas.

March 29, 2004.

Jennifer S. Stoddard, Joshua H. Northam, Shelly L. Skeen, James D. Blume, Blume & Stoddard, Dallas, for appellant.

Ronald E. Holub, Law Offices of Ronald E. Holub, P.C., Dallas, for appellee.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FRANCIS.

In this dispute over ownership of four vehicles, Park Cities Limited Partnership d/b/a Park Cities Ford appeals the trial court's judgment in favor of Transpo Funding Corporation. In three issues, Park Cities argues the trial court erred in (1) finding Transpo had acquired valid legal title to the vehicles and Park Cities converted the vehicles, (2) failing to find a third party was the agent of Transpo, and (3) awarding Transpo attorney's fees under the Uniform Declaratory Judgments Act. We affirm.

This case was tried to the court without a jury. Two witnesses testified: Transpo president Ronald Jones and Park Cities managing partner Jeff Enright. The evidence showed Park Cities is an automobile dealership that buys and sells new and used vehicles. During the last week of January 2002, Scott Porter, a wholesale dealer of used cars, brought four vehicles to Park Cities and offered them for purchase. According to Enright, Porter left the vehicles while Park Cities inspected them. Enright said that after the inspections, Park Cities agreed to purchase the vehicles once Porter provided certificates of title. In anticipation of receiving titles, Park Cities wrote four checks totaling $59,200: one on January 30, two on February 5, and one on February 8. Some days later, while doing inventory and title reconciliation, Park Cities discovered it did not have titles to the vehicles, the checks were missing, and Porter had cashed them. Enright testified that after further investigation, it learned that no Park Cities employee gave Porter the checks, leading Park Cities to conclude that, knowing where the checks were kept, Porter or his assistant entered the office after hours and took them. Park Cities then learned Transpo claimed it held the titles to the four vehicles.

Transpo is a finance company that provides funds for financing to people in the used car business, a process commonly referred to as floor plan financing. If a used car dealer wanted to obtain financing from Transpo, it had to enter into a Floor Plan Contract and Security Agreement. Once such an agreement was executed, Transpo would provide funding by paying a draft, which was forwarded either to Transpo or its bank. Transpo would not fund the draft unless it had the title and related documents. Transpo had such an agreement with Porter.

In mid-February, Porter went to Transpo to obtain funding for the same four vehicles it offered to sell Park Cities. Between February 14 and February 21, Transpo paid drafts and acquired the titles to the four vehicles in dispute. Shortly thereafter, Transpo learned that Porter was in financial trouble. Transpo immediately met with Porter, who signed a letter authorizing Transpo to exercise its options under their security agreement. Transpo

filed for and received from the Texas Department of Transportation new titles showing Transpo as owner. Transpo learned that Park Cities had possession of the vehicles and demanded Park Cities either return or pay for the vehicles. Park Cities refused, asserting it owned the vehicles. Transpo and Park Cities sued each other, each seeking a declaratory judgment that it was the rightful title owner of the vehicles and alleging conversion of property.

At trial, Transpo argued it owned the vehicles pursuant to the Certificate of Title Act, which requires transfer of title at the time of the sale. Park Cities argued that under the Texas Business and Commerce Code, it was a good faith purchaser and the sale was complete when Porter delivered the vehicles, irrespective of delivery of the titles.

After hearing the evidence, the trial judge found in Transpo's favor and (1) declared that Transpo had acquired valid title to the four vehicles and (2) declared Park Cities converted the vehicles by refusing to deliver them to Transpo in response to its demands. The judge awarded Transpo damages for the conversion and attorney's fees under the declaratory judgments act. The judge ordered that Park Cities take nothing on its claims. This appeal ensued.

■ In its first issue, Park Cities contends it is the rightful owner of the vehicles as a good faith purchaser pursuant to sections 2.401 and 2.403 of the business and commerce code. It argues title passed when (1) Porter delivered physical possession of the vehicles, (2) Park Cities paid Porter for the vehicles, and (3) Porter cashed Park Cities's checks in consideration of Porter's sale of the vehicles to Park Cities. It argues that Transpo could not have obtained a security interest in the vehicles because Porter had no right, title, or interest to transfer.

Section 2.401(b) provides:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place. . . .

TEX. BUS. & COM.CODE ANN. § 2.401(b) (Vernon 1994).

Section 2.403(a) provides:

A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

(1) the transferor was deceived as to the identity of the purchaser, or

(2) the delivery was in exchange for a check which is later dishonored, or

(3) it was agreed that the transaction was to be a 'cash sale', or

(4) the delivery was procured through fraud punishable as larcenous under the criminal law.

TEX. BUS. & COM.CODE ANN. § 2.403(a) (Vernon 1994).

We begin by assuming for purposes of this opinion that Park Cities is correct and these provisions are controlling in this lawsuit. Additionally, we note that it was Park Cities's burden at trial to establish any necessary facts to establish application of these provisions.

With this in mind, we question whether (1) this was a "transaction of purchase" and (2) Park Cities even meets the definition of purchaser. A "purchaser" means a person who takes by purchase. TEX. BUS. & COM.CODE ANN. § 1.201(30) (Vernon Supp. 2004). A "purchase" means taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift or any other voluntary transaction creating an interest in property. *Id.* at 1.201(29).

At trial, Enright explained the process Park Cities used to consummate a transaction with a wholesaler such as Porter. According to Enright, the dealer would drop off the vehicles to be inspected; the parties would agree on a price; Park Cities would begin to fill out the appropriate paperwork; Park Cities would cut a check; and the check would be handed over once Park Cities received title. Enright testified that Gary Bethume was responsible for making the check request and would keep the check in his office until the "swap" was made. Bethume was never authorized to release the check to a wholesaler without first receiving title. Explained Enright: "So it would be a transaction of provide us the title and we would provide you the check." Park Cities had been involved in several hundred transactions with Porter in the past without difficulty.

In this case, the checks were being held until Porter provided the titles. According to Enright, Bethume denied releasing the checks in this case. Enright testified that no Park Cities employee ever admitted tendering the checks to Porter and he believed either Porter or his assistant came into the office after hours, stole the checks, and cashed them. Under the circumstances presented here, we have difficulty characterizing this incident as a "sale" or "other voluntary transaction creating an interest in property."

The trial judge could have concluded from the evidence that the parties' agreement and prior course of dealing required delivery of the titles before the sales were complete. Because the titles were never delivered, the transactions were not complete and Park Cities never acquired ownership. *See Arcadia Fin., Ltd. v. Southwest–Tex Leasing Co.,* 78 S.W.3d 619, 624 (Tex.App.-Austin 2002, pet. denied).

■ But even if these facts gave rise to the legal conclusion that a sale occurred, the trial judge could have concluded that Porter did not hold title or the power to transfer title to these vehicles at the time he left them at Park Cities Ford. In a bench trial, the trial court, as fact finder, is the sole judge of the credibility of the witnesses. *Munters Corp. v. Swissco–Young Indus., Inc.,* 100 S.W.3d 292, 296–97 (Tex.App.-Houston [1st Dist.] 2002, pet. dism'd). The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Id.* When, as here, the trial court does not enter findings of fact and conclusions of law after a bench trial, we may uphold the judgment on any legal theory supported by the pleadings and evidence. *Id.*

Neither Jones nor Enright could say at trial where the titles to the four vehicles were when Porter approached Park Cities with the offer to sell them in late January. No evidence reflected that Porter had the titles or the authority to transfer any title. The only suggestion to that effect was Enright's testimony that Porter "represented" he had the titles. The evidence does not indicate to whom the "representation" was made. Regardless, Enright acknowledged that Park Cities never received the titles nor did it make an inde-

pendent investigation to verify that Porter had them. In sum, there was no evidence that Porter had paid for or had possession of the titles or had authority to transfer the titles on the date he delivered the vehicles to Park Cities, on the date the checks were written, or on the date the checks were stolen from Park Cities. Under these circumstances, the trial judge could have concluded that Porter had no title to transfer or any authority to transfer title and Park Cities acquired no title.

■ We also reject Park Cities argument that Transpo "entrusted" the goods to Porter pursuant to section 2.403(b) allowing Porter to transfer good title to Park Cities. Section 2.403(b) provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him the power to transfer all rights of the entruster to a buyer in ordinary course of business." Tex. Bus. & Com.Code Ann. § 2.403(b) (Vernon 1994).

The evidence shows that Transpo was not involved in any deal with these four vehicles at the time Porter offered them for sale to Park Cities. Transpo did not know about Park Cities until it had funded the purchase of the vehicles, and Park Cities was not aware of Transpo at the time it agreed to buy the vehicles. Under these circumstances, we fail to see how Park Cities can claim that Transpo entrusted the vehicles to Porter for sale to Park Cities. Our resolution makes it unnecessary for us to consider Park Cities's remaining arguments. We reject the first issue.

In its second issue, Park Cities argues the trial court erred when it impliedly failed to find that Porter d/b/a Porter Motor Company was the agent of Transpo. We view this complaint as a challenge to the legal sufficiency of the evidence to support the failure to find.

■ The party asserting the agency relationship has the burden of proving its existence. *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 896 (Tex.App.-Dallas 2003, no pet.). Because Park Cities asserted the agency relationship, it bore the burden of proof. A party attempting to overcome an adverse fact finding to an issue on which it had the burden of proof must surmount two hurdles. *See Honeycutt v. Billingsley*, 992 S.W.2d 570, 577 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (op. on reh'g). First, the reviewing court must examine the record for evidence supporting the finding or failure to find, while ignoring all evidence to the contrary. Second, if there is no evidence to support the finding or failure to find, the reviewing court will then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Id.*

■ The question of agency is usually one of fact. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 442 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.). Absent actual or apparent authority, an agent cannot bind a principal. *Id.* Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he had, or by want of ordinary care allows the agent to believe himself to possess. *Id.* Apparent authority exists when conduct by the principal leads a reasonable third party to believe that the agent has the authority that he purports to exercise. *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 300 (Tex.App.-Austin 2000, pet. denied). To establish authority, the principal must make some manifestation to the agent (actual authority) or to a third party (apparent authority) that he is conferring such authority. *Id.*

■ Here, the record contains some evidence to support the failure to find both

actual and apparent authority. With respect to actual authority, paragraph 15 of the agreement between Transpo and Porter provides:

> Transpo and its agents, employees, and its agents, employees, directors, and shareholders shall not be liable to [Porter], [Porter's] patrons, invitees, customers, agents, or employees, or to any third party, whether as trespasser, invitee, licensee, visitor, or otherwise, for any damage, injury, or loss caused by or resulting from any act or omission of [Porter], [Porter's] patrons, customers, agents, or employees, or any third party. [Porter] shall indemnify, defend and hold Transpo harmless from and against any and all claims, losses, damages, liabilities, costs or expenses (including attorneys' fees) arising out of this agreement.

In addition, Jones testified Transpo was not in the business of selling cars; it did not sell cars through dealers; and it was not using Porter to "go out and sell cars" for it.

■ With respect to apparent authority, we consider the conduct of Transpo as communicated to Park Cities. The undisputed evidence was that Park Cities had no idea that Transpo was involved in the transaction until late February, after it learned the checks were missing and it did not have title. Consequently, we conclude there is some evidence to support the trial court's implied finding that Porter was not acting with apparent authority. The second issue is without merit.

In its third issue, Park Cities argues the trial court erred in awarding Transpo attorney's fees under the declaratory judgments act because (1) Transpo sought declaratory relief for the sole purpose of obtaining attorney's fees and (2) there is insufficient evidence to support the award. We disagree.

■ The declaratory judgments act provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985); *Vincent v. Bank of Am., N.A.,* 109 S.W.3d 856, 868 (Tex.App.-Dallas 2003, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Vincent,* 109 S.W.3d at 868. We broadly construe the trial court's discretion to award attorney's fees and costs in a declaratory judgment action. *Id.*

■ Park Cities first complains that Transpo has simply "recast" its conversion claim into a claim for declaratory relief so that it would be able to recover attorney's fees. We agree that declaratory relief plea may not be coupled to a damage action simply in order to pave the way to recover attorney's fees. *See Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc.,* 796 S.W.2d 763, 772 (Tex.App.-Dallas 1990, writ denied). We do not agree, however, that Transpo took that action in this case.

■ Declaratory judgment under the statute is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties; and (2) the controversy will be resolved by the declaration sought. *Tex. Dep't of Pub. Safety v. Moore,* 985 S.W.2d 149, 153 (Tex.App.-Austin 1998, no pet.). The existence of another adequate remedy does not bar a party's right to maintain an action for declaratory judgment. *See Crow v. City of*

*Corpus Christi,* 146 Tex. 558, 209 S.W.2d 922, 924 (1948).

Here, there was an actual, real, justiciable controversy concerning who acquired valid, legal title to the four vehicles in dispute: the holder of the certificates of title or the possessor of the vehicles. Most of, if not all, the time at trial was dedicated to the issue of ownership. The facts were largely undisputed, and each party argued a different statute controlled. The trial judge ultimately resolved the controversy by declaring that Transpo acquired valid, legal title. That declaration had a valid, legal meaning and ended the controversy of who owned the vehicles. The trial judge then decided the separate issue of whether Park Cities converted the vehicles by refusing to return them once requested. Under these circumstances present here, we conclude the plea for declaratory relief had a purpose apart from seeking to obtain attorney's fees. The trial court did not err on this basis in awarding attorney's fees.

 Second, Park Cities argues that Transpo failed to segregate the amount of time spent on its declaratory relief claim from (1) the time spent on the conversion claim and (2) the time spent defending the counterclaim by Park Cities. When a plaintiff seeks to recover attorney's fees in a case involving multiple claims, at least one of which will support an award of attorney's fees and at least one of which does not, the plaintiff must offer evidence segregating attorney's fees among the various claims. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10–11 (Tex.1991).

 An exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Id.* A plaintiff must either segregate the fees among the several claims or establish that the claims are sufficiently interrelated. *Id.*

Transpo's counsel testified by affidavit that (1) $175 an hour is a reasonable attorney's fee in Dallas County and (2) he spent 106.75 hours for "necessary legal services" including "researching and investigating [Transpo's] claims, for conducting and responding to written discovery, for extensive legal research on the issues raised by the parties, for preparing the pleadings, pretrial materials and of course for conducting the trial and preparing the Trial Brief." He asserted that given that Park Cities also claimed title to and ownership of the vehicles, the "time associated with defending the Counterclaim of [Park Cities] is inextricably intertwined with and inseparable from the time associated with handling the claims on behalf of the plaintiff."

Park Cities did not present controverting evidence. The record evidence establishes that for Transpo to prevail on its declaratory relief claim, it had to oppose and defeat Park Cities's claim for declaratory relief as to title and ownership of the vehicles. The issues were inextricably intertwined. As previously stated, the trial largely focused on who acquired valid title to the vehicles, not whether Park Cities refused to return the vehicles on demand. Under these circumstances, the trial judge could have concluded the exception to the general rule applied in awarding attorney's fees. The third issue is without merit.

We affirm the trial court's judgment.