Affirmed in Part, Reversed and Remanded in Part, and Opinion filed March
8, 2007








 

Affirmed
in Part, Reversed and Remanded in Part, and Opinion filed March 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00548-CV

____________

 

REBECCA L. BROESCHE, Appellant

 

V.

 

JOHN DANIEL JACOBSON AND TEXAS
INDEPENDENT EXPLORATION, INC., Appellees

 



 

On Appeal from the 308th
District Court

Harris County, Texas

Trial Court Cause No. 1993-06210

 



 

O P I N I O N

This appeal arises out of a dispute between appellant
Rebecca L. Broesche and appellee John Daniel Jacobson over the interpretation
of their 1993 divorce decree.  In ten issues, Broesche claims the trial court
erred in (a) its interpretation of the decree, (b) awarding attorneys= fees and
sanctions against her, and (c) entering a turnover judgment awarding funds
interpleaded by appellant Texas Independent Exploration, Inc. (ATIE@) to Jacobson.  We
affirm in part and reverse and remand in part.








I.  Background

Broesche and Jacobson divorced in 1993 with an agreed
decree.  Post-divorce litigation began in 1996.  We discuss only the details of
these protracted and complicated legal proceedings as are necessary to the
disposition of this appeal.

Jacobson is a geologist employed by TIE, and TIE
compensates Jacobson largely by giving him interests in the oil and gas wells
he helps develop.  When Broesche, who is also a geologist, and Jacobson
divorced, the decree provided that Broesche was to receive A[o]ne-half of all
oil and gas interests of the parties as described in Exhibit A,@ which is a list
of fifty oil and gas wells.  The central issue in this litigation is the
parties= differing
interpretations of exactly what oil and gas interest Broesche received in the
decree.  Jacobson contends her interest is only in the specific wells listed
whereas Broesche claims she has an interest in the leaseholds associated with
each well.  The trial court eventually agreed with Jacobson and ruled as a
matter of law that the agreed decree unambiguously awarded an interest only in
the wells listed in Exhibit A, not in the associated leaseholds or any
subsequent wells drilled pursuant to those leaseholds.

The decree also provided that Broesche was responsible for
paying one-half of federal income taxes due during certain years of the
marriage.  When Broesche failed to pay these taxes, Jacobson brought an action
in 1996 to enforce the decree.  In 1997, the trial court entered judgment for
Jacobson in the amount of $24,421 plus interest.  Jacobson then filed a writ of
garnishment against TIE, who, as operator of the wells, was responsible for
paying Broesche revenue for her oil and gas interests under the decree.  The
trial court eventually dismissed the writ of garnishment and granted a new
trial on the tax issue on the condition, to which Broesche agreed, that TIE
continue to hold in suspense the money generated from Broesche=s oil and gas
interests.  The trial court later held a new trial on the tax issue and other
issues and entered a judgment in June 2000.  Thereafter, in September 2000, the
trial court granted another motion for new trial on the other issues but not
the tax issue, rendering the tax judgment interlocutory.








Meanwhile, TIE became further involved in the litigation in
1998 when Broesche asserted claims against TIE regarding TIE=s handling of her
oil and gas interests, including breach of contract, fraud, and conversion. 
TIE moved for summary judgment on all claims.  The trial court granted summary
judgment for TIE and severed this judgment in 1999, and Broesche did not
appeal.  TIE continued to hold revenues from Broesche=s oil and gas
interests in suspense because the trial court had not yet held the second trial
on the remaining issues.  However, both parties began demanding that TIE
release the funds to them.  Because of these conflicting demands, in 2002, TIE
filed an interpleader action and deposited the suspensed funds in the court=s registry.  After
TIE filed its interpleader, Broesche re-filed her previously adjudicated claims
against TIE as counterclaims to the interpleader.  TIE moved for summary
judgment on these claims, and Broesche moved for partial summary judgment as to
the conversion claim.  In 2003, the trial court granted TIE=s motion and
denied Broesche=s motion.

In January 2004, the remaining issues came to trial again. 
In a pretrial hearing, the trial court made its ruling regarding the
interpretation of the decree, rejecting Broesche=s arguments
regarding the nature of her oil and gas interests as a matter of law.  This
ruling effectively resolved all remaining claims except Jacobson=s and TIE=s claims for
attorneys= fees and sanctions against Broesche.  The trial court
had granted TIE=s motion for sanctions on June 17, 2003
and awarded $17,500 to TIE but carried Jacobson=s motion for sanctions. 
On February 24, 2004, the trial court signed an order granting Jacobson=s motion for
sanctions, awarding $162,000.  The same day, the trial court entered a final
judgment that, among other things, reconfirmed Jacobson=s prior tax
judgment and awarded TIE $119,598.74 in attorneys= fees for its
interpleader action.  Now that the tax judgment was final, Jacobson filed a
motion to have the interpleaded funds turned over to him to satisfy the
judgment, which the trial court granted on February 27, 2004.  Because the
amount of tax money owed had more than doubled with interest, Jacobson received
most of the $55,925.39 in proceeds in the court=s registry.








In ten issues, Broesche appeals the final judgment, the
turnover order, and both sanctions orders.

                                                    II.  Analysis

                                      A. 
Interpretation of the Decree

In her first issue, Broesche claims the trial court erred
in its interpretation of the divorce decree.  An agreed divorce decree is a
contract subject to the usual rules of contract interpretation.  See
McGoodwin v. McGoodwin, 671 S.W.2d 880, 882 (Tex. 1984).  Our primary concern in interpreting a
contract is ascertaining the true intent of the parties.  Heritage Res.,
Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996); Zurich Am. Ins.
Co. v. Hunt Petroleum (AEC), Inc., 157 S.W.3d 462, 465 (Tex. App.CHouston [14th Dist.] 2004, no pet.). 
We examine the writing as a whole in an effort to harmonize and give effect to
all the provisions of the contract so that none will be rendered meaningless.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Zurich, 157 S.W.3d at
465. 
If the contract can be
given a certain or definite legal meaning or interpretation, then it is not
ambiguous, and the court will construe it as a matter of law.  Coker,
650 S.W.2d at 393; Cook Composites, Inc. v. Westlake Styrene Corp., 15
S.W.3d 124, 131 (Tex. App.CHouston [14th Dist.] 2000, pet. dism=d).  If, however, a contract is
capable of more than one reasonable interpretation, it is ambiguous.  Am.
Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003); Zurich,
157 S.W.3d at 465.  This court may conclude a contract is ambiguous, even
though the parties do not so contend.  Zurich, 157 S.W.3d at 465.  When
a contract is ambiguous, construing it as a matter of law is improper because
the interpretation of the contract becomes a fact issue.  See Coker, 650
S.W.2d at 394; Zurich, 157 S.W.3d at 465.








The agreed decree here divides the marital estate, with
parallel provisions awarding each party similar assets.  Regarding oil and gas
interests, the decree awards each party A[o]ne-half of all
oil and gas interests of the parties as described in Exhibit A.@  Exhibit A is a
chart with fifty rows and five columns.  The five columns are labeled ACounty,@ AWell,@ AWI%,@ ANRI%,@ and AStatus.@  AWI%@ means working
interest percentage, and ANRI%@ means net revenue
interest percentage.  AStatus@ types are AA@ for active, AI@ for inactive, and
AAPO@ for after payout.[1]

The decree further provides that Broesche=s interests Ashall be
transferred in the form of assignments to be prepared by [TIE] subsequent to
the divorce of the parties.  It is further ORDERED that [Jacobson] take all
actions necessary to insure that one-half of the active interests on Exhibit A
are adequately and appropriately transferred to [Broesche].@  A separate
section of the decree, entitled ADivision of Assets
and Liabilities Not Provided for in Decree,@ states in part as
follows:

It is further Ordered that all oil
and gas interests, or other contractual or business interests which may have
accrued during the course of the marriage but which are not specifically listed
herein, are awarded to the party whose personal efforts or signature created
such interests, if any.   

Broesche argues that the decree unambiguously awards her an
interest not only in the fifty specific wells listed in Exhibit A but in the
leaseholds enabling those wells to be built.  She contends that the term Aworking interest@ means leasehold
interest.  Thus, she reasons, Exhibit A=s reference to AWI%@ means it is
describing a leasehold interest.  Broesche further argues that the decree shows
an intent to divide the marital estate evenly and that awarding all leasehold
interests to Jacobson would be inconsistent with this intent.[2] 
Jacobson contends the decree unambiguously awards Broesche an interest only in
the specific wells listed in Exhibit A.  He disputes that a working interest
necessarily means a leasehold interest and points out that neither Exhibit A
nor any other decree provision mentions any mineral lease.  Jacobson also
relies upon the language in the decree stating that any oil and gas interests
not specifically listed in the decree are awarded to the person whose efforts
created the interests, which in this case would be Jacobson.








Broesche is correct that a working interest is generally
understood to mean a mineral interest created by a leasehold.[3] 
However, as the Oklahoma Supreme Court has noted, oil and gas terms such as
working interest are often used Aloose[ly] and
inaccurate[ly].@  Colonial Royalties Co. v. Keener,
266 P.2d 467, 471 (Okla. 1953).  Though the technical definition of working
interest may be synonymous with a leasehold interest, working interest is often
used merely to denote an interest in mineral rights.  Id.; see also
Smith v. Graham, 705 S.W.2d 705, 707 (Tex. App.CTexarkana 1985, writ ref=d n.r.e.) (noting
that the use of Aworking interest@ in a deed could
be consistent with assigning a working interest created by leases or a simply a
method to calculate the percentage of the mineral interest granted); Schnitt
v. McKellar, 427 S.W.2d 202, 208 n.2 (Ark. 1968) (noting that A[t]reatment of the
words >working interest= as meaning
something other than their purely technical definition is not novel@ and that Ait is often used
to denote merely an interest in the mineral rights@).








We cannot determine in this case whether the parties used
the term working interest in its technical sense to refer to a leasehold
interest or more loosely to mean mineral interests.  Both Broesche and Jacobson
are geologists, and they may well have used the term in its technical sense. 
Moreover, interpreting the decree as dividing any leasehold interests Jacobson
might have had would be consistent with the decree=s structure of
parallel division of other marital property.  However, neither the body of the
decree nor Exhibit A make any reference to any oil and gas leases.  Indeed, we
cannot discern from the four corners of the decree whether Jacobson had any
leasehold interests that could have been divided by the decree, much less a
leasehold interest in every well listed in Exhibit A.  See Extraction Res.,
Inc. v. Freeman, 555 S.W.2d 156, 159 (Tex. Civ. App.CEl Paso 1977, writ
ref=d n.r.e.) (AIt is elementary
that one cannot convey what he does not own.@).  Further, the
later decree provision disposing of oil and gas interests not specifically
listed in the decree seems to contemplate that such interests exist, and
interpreting working interests as leasehold interests and therefore included in
Exhibit A would seem to render this provision meaningless.  See Schaefer,
124 S.W.3d at 159 (contracts should be interpreted to avoid rendering a
provision meaningless).  We conclude both of these interpretations of the
decree are reasonable, and thus we find the decree is ambiguous as to the exact
nature of the oil and gas interests awarded to Broesche in the decree.  See Zurich, 157 S.W.3d at 467 (conflicting yet
reasonable interpretations renders a contract ambiguous).  Therefore, we
conclude the trial court erred in finding that the decree unambiguously awarded
Broesche an interest only in the wells and not in any leaseholds.  We sustain
Broesche=s first issue.[4]

                                             B. 
Conversion Claims








In 2002, Broesche began demanding that TIE release to her
the oil and gas revenues that TIE had been holding in suspense since Jacobson
filed the writ of garnishment, which was later dismissed, in 1998.  Broesche
eventually filed conversion claims against both Jacobson and TIE (in the form
of counterclaims to TIE=s interpleader) on the theory that TIE=s continued
suspense of these funds was illegal because the garnishment action was
dismissed and the court=s order to continue holding the funds
applied only to money TIE had already held, not to future revenues.  Broesche
moved for partial summary judgment on her conversion claims against Jacobson
and TIE on this illegal garnishment theory, and TIE filed its own motion for
summary judgment.  The trial court granted TIE=s motion and
denied Broesche=s.  In issues three through six, Broesche
reasserts this illegal garnishment theory and claims the trial court erred in
denying her partial summary judgment motion and granting TIE=s motion.

We need not address the merits of Broesche=s issues because
they are not properly before us.  An order denying summary judgment is
generally not appealable because it is not a final judgment.  Cinn. Life
Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996).  As to Jacobson, in the
same pretrial hearing in which the trial court construed the decree against
her, Broesche withdrew her conversion claim against Jacobson, a fact the trial
court noted in the findings of fact and conclusions of law in support of its
final judgment.  Thus, the trial court never entered a final judgment on
Broesche=s conversion claim
against Jacobson.  As to TIE, the trial court not only denied Broesche=s summary judgment
motion but granted TIE=s motion.  When parties file cross-motions
for summary judgment and the court grants one but denies the other, the losing
party cannot appeal the denial of its motion without also appealing the
granting of the other party=s motion.  See CU Lloyd=s of Tex. v.
Feldman, 977 S.W.2d 568, 569 (Tex. 1998) (noting that denial of summary
judgment was appealable because appellant appealed ruling granting other party=s motion); Bullacher
v. First Republic Bank, No. C14-89-00015-CV, 1990 WL 4230, at *1 (Tex. App.CHouston [14th
Dist.] Jan. 18, 1990, writ denied) (not designated for publication) (refusing
to consider arguments regarding denial of appellants= summary judgment
motion because appellants did not challenge trial court=s grant of
appellees= summary judgment motion).  Broesche=s brief never
mentions, much less rebuts, the specific grounds for summary judgment on her
conversion claim against TIE offered in TIE=s motion.  See
Ketter v. ESC Med. Sys., Inc., 169 S.W.3d 791, 797 (Tex. App.CDallas 2005, no
pet.) (AWhen the appeal
does not challenge one of the grounds for summary judgment, the judgment may be
affirmed on that ground alone.@).  For these reasons, we overrule
Broesche=s third, fourth,
fifth, and sixth issues.

 








                                                    C. 
Sanctions

In January 2003, Jacobson moved for sanctions against
Broesche, asserting multiple grounds, including filing numerous groundless
pleadings in bad faith or for improper purposes, abusing the discovery process,
and engaging in conduct intended to disrupt the proceedings.  He requested
sanctions pursuant to Rules 13 and 215 of the Texas Rules of Civil Procedure,
section 10.001 of the Texas Civil Practice and Remedies Code, and the court=s inherent power
to sanction for improper conduct.  TIE joined in Jacobson=s motion.  After a
hearing in April 2003, the court carried Jacobson=s motion but
granted TIE=s motion and ordered Broesche to pay TIE $17,500 in
sanctions.  The trial court issued this order on June 17, 2003.  After the
pretrial hearing in which the court construed the divorce decree against
Broesche, the trial court held another sanctions hearing and, in an order dated
February 24, 2004, granted Jacobson=s motion for
sanctions and ordered Broesche to pay Jacobson $162,000.

In her seventh and eighth issues, Broesche alleges the
trial court abused its discretion in imposing sanctions.  She neither disputes
the trial court=s method of calculating the amount of
sanctions, which was based on unnecessary attorneys= fees expended in
response to the sanctionable conduct, nor claims the overall amount of
sanctions imposed is unreasonable.  Rather, she argues the evidence is
insufficient to support the trial court=s sanctions
findings and/or that the conduct at issue was not sanctionable.  We review a
trial court=s decision to award sanctions for an abuse of
discretion.  Clark v. Bres, No. 14-05-00482-CV, __ S.W.3d __, 2006 WL
2548232, at *8 (Tex. App.CHouston [14th Dist.] Sept. 5, 2006, no
pet. h.).








The trial court found at least twenty-six bases to sanction
Broesche based on Broesche=s conduct and the conduct of her counsel.[5] 
These include filing various frivolous motions and pleadings, abuse of the
discovery process regarding Broesche=s expert
designation and behavior in scheduling and testifying at her deposition, and
engaging in conduct intended to disrupt the proceedings by abusing the rules of
fair play and causing delay.  After reviewing the record and briefs, we
conclude the trial court did not abuse its discretion in imposing sanctions. 
We will not discuss each incident in detail but will instead focus on the
incidents most prominent in the sanctions hearings, briefs, and oral argument.

After previously filing claims against TIE that were
adjudicated on summary judgment, severed, and not appealed, Broesche re-filed
the same claims against TIE years later as counterclaims to its interpleader. 
TIE was then forced to re-defend against these claims in the course of
increasingly contentious and protracted litigation.  The trial court found that
these re-filed claims were frivolous and filed for the purposes of delay and
harassment in violation of Rule 13.  Broesche merely asserts without
explanation that her counterclaims were based on a good faith dispute.  The
trial court disagreed, and Broesche has not established that the trial court
abused its discretion in finding that re-filing claims that had been
adjudicated, severed, and not appealed was in bad faith and for harassment.








The trial court found Broesche abused the discovery process
in conduct relating to her deposition in December 2002.  Broesche=s deposition was
scheduled for December 6, a date she chose, but she failed to appear, claiming
to be sick.  Broesche=s counsel alleges he gave the trial court
a doctor=s excuse to
substantiate the illness, but he has not provided any record citation in
support.  Broesche=s deposition was rescheduled for December
9.  Broesche was not prepared to answer questions regarding her damages
calculation, and in a hearing after the deposition, the court gave Broesche a
day to prepare and ordered the deposition to resume on December 11.  However,
Broesche was still unable to fully answer damages questions.  Further, even though
her deposition began around 9:45 a.m., Broesche did not disclose until after
2:00 p.m. that she and her attorney had located another box of relevant
documents the night before that had not been produced before the discovery
deadline.  Broesche claims that one day was not enough time to prepare and that
the failure to produce the box of documents was inadvertent.  The trial court
disagreed, and, based on the record, we cannot say the trial court abused its
discretion in imposing sanctions for this course of conduct.

A series of incidents around Christmas 2002 received the
most attention in the sanctions proceedings.  Trial, which had been re-set many
times, was set for January 6, 2003 with a December 27, 2002 deadline for
exchanging draft jury charges and motions in limine.  Broesche hired State
Representative Joseph M. Nixon as co-counsel on December 23, 2002 and
immediately prepared a motion for legislative continuance.  Instead of faxing
service to opposing counsel, as had been his practice throughout the
litigation, Broesche=s counsel drove to the airport post office
late that evening to mail the motion and service copies.  Despite telephone
conversations with and personal deliveries to opposing counsel on December 23
and 24, while they were working to meet the court-imposed December 27
deadlines, Broesche=s counsel never mentioned that he had
hired Nixon or filed a motion for continuance.  TIE=s and Jacobson=s counsel learned
this on December 26, after working on Christmas Eve and Christmas day to meet
the deadlines.  Nixon never drafted any pleadings and made only one court
appearance.  The trial court found that Broesche hired Nixon for the purpose of
delay and that Broesche=s counsel=s failure Ato timely notify
counsel of Mr. Nixon=s retention and appearance was intended to
cause unnecessary additional litigation fees to TIE and [Jacobson] by allowing
them to continue to prepare for trial during the Christmas holidays while
[Broesche=s counsel] knew he was going to obtain a continuance.@ 








Broesche=s counsel has defended his actions,
explaining that he hired Nixon because he needed help on the case and that he
thought the mailed service would arrive the next day, based on his past
experience of mailing from the airport.  The trial court rejected these
explanations, and there is evidence supporting the trial court=s conclusion. 
Broesche=s counsel also
contends that even if it would have been polite to notify opposing counsel of
his retention of Nixon and motion for continuance in another way, he violated
no rule of civil procedure in serving by mail and thus sanctions are not
appropriate.  We reject this argument for two reasons.  First, the trial court
found that filing the motion for continuance was for the purposes of delay and
therefore frivolous and in bad faith, in violation of Rule 13.  Second, courts
have inherent power to sanction for abuse of the judicial process, even if the
conduct at issue does not violate a specific rule or statute.  See Clark,
2006 WL 2548232, at *8; Vela v. Wagner & Brown, Ltd., 203 S.W.3d 37,
62 (Tex. App.CSan Antonio 2006, no pet.).  The trial court did not
abuse its discretion in determining Broesche should be sanctioned for this
conduct, even if the conduct did not violate a specific rule or statute.

The trial court awarded sanctions based not only on these
three incidents but on a host of other misconduct.  In assessing sanctions, the
trial court is entitled to consider the entire course of the litigation.  See
Clark, 2006 WL 2548232, at *8; see also Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241 (Tex. 1985) (noting the presumption in sanctions
proceedings that the trial court is familiar with the entire case).  Based on
the entire record and the instances of misconduct we have discussed, we
conclude the trial court did not abuse its discretion in imposing sanctions. 
We overrule issues seven and eight.

                                               D. 
Attorneys= Fees

The trial court awarded TIE $119,598.74 in attorneys= fees for its
interpleader.  In her ninth issue, Broesche challenges this award.  The amount
of fees included not only TIE=s actual time spent preparing and filing
the interpleader but also its time spent defending against Broesche=s conversion
counterclaim.  Broesche does not contend that the hours spent defending the
counterclaim were unreasonable.  Instead, she contends TIE is entitled to
attorneys= fees only for the time spent preparing and filing the
interpleader.








We review a trial court=s award of
attorneys= fees for an abuse of discretion.  Olmos v. Pecan
Grove Mun. Util. Dist., 857 S.W.2d 734, 741 (Tex. App.CHouston [14th Dist.] 1993, no writ). 
An innocent stakeholder prevailing in an interpleader action is entitled to
recover attorneys= fees.  Id.  Attorneys= fees are
generally not available for a conversion claim.  F.D.I.C. v. Golden Imports,
Inc., 859 S.W.2d 635, 646 (Tex. App.CHouston [1st Dist.] 1993, no writ).  A party seeking
attorneys= fees must show the fees were incurred on a claim for
which fees are recoverable and thus usually must segregate fees incurred on
those claims from fees incurred on claims for which attorneys= fees are not
recoverable.  Tony Gullo Motors I, L.P. v. Chapa, No. 04-0961, 2006 WL
3751591, at *6, 8 (Tex. Dec. 22, 2006).  However, if time spent on a claim for
which attorneys= fees are not recoverable is inextricably
intertwined with a claim for which attorneys= fees are
recoverable, attorneys= fees are recoverable for both claims.  Stewart
Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997); see also Chapa,
2006 WL 3751591, at *6B8.  A[W]hen discrete
legal services advance both a recoverable and unrecoverable claim[,] . . . they
are so intertwined that they  need not be segregated.@  Chapa,
2006 WL 3751591, at *8.








We find that TIE=s interpleader and
defense of the conversion counterclaim were inextricably intertwined.  To
recover on its interpleader, TIE had to prove, among other things, that it was
facing rival claims to the funds and had reasonable doubts as to which claim
was valid.  See McCall v. AXA Equitable Life Ins. Co., No.
14-04-01111-CV, 2006 WL 17861, at *2 (Tex. App.CHouston [14th
Dist.] Jan. 5, 2006, no pet.) (mem. op.); Tri-State Pipe & Equip., Inc.
v. S. County Mut. Ins. Co., 8 S.W.3d 394, 402 (Tex. App.CTexarkana 1999, no
pet.).  However, Broesche=s conversion claim included allegations
that TIE and Jacobson colluded to deny her revenues to which she was entitled
and that TIE should have paid Broesche the funds instead of choosing to
acknowledge Jacobson=s unenforceable claim and then
interpleading them.  If true, these allegations would have shown that TIE did
not have reasonable doubts as to which claim was valid.  We conclude the
interpleader and defense of the counterclaim were inextricably intertwined
because to prevail on its interpleader, TIE had to defeat the conversion
counterclaim, and thus legal services to defeat the counterclaim advanced TIE=s interpleader.  See
Chapa, 2006 WL 3751591, at *8; see also Park Cities Ltd. P=ship v. Transpo
Funding Corp., 131 S.W.3d 654, 662 (Tex. App.CDallas 2004, pet. denied) (concluding claim and counterclaim
were inextricably intertwined because for party to prevail on its claim, it had
to oppose and defeat the counterclaim); Coleman v. Rotana, Inc., 778 S.W.2d 867,
874 (Tex. App.CDallas 1989, writ denied) (same). 
Therefore, the trial court did not abuse its discretion in awarding TIE
attorneys= fees based on its defense of Broesche=s conversion
counterclaim.[6] 
See Stark v. Benckenstein, 156 S.W.3d 112, 125 (Tex. App.CBeaumont 2004, pet. denied)
(finding no abuse of discretion in attorneys= fees award
because prosecution of claim and defense of counterclaims were inextricably
intertwined); Park Cities, 131 S.W.3d at 662 (same); Coleman, 778
S.W.2d at 874 (same).  We overrule Broesche=s ninth issue.

                                            E. 
Turnover Judgment

After the trial court entered final judgment and thus
Jacobson=s judgment for
unpaid taxes was no longer interlocutory, Jacobson filed a motion for turnover
of the interpleaded funds to satisfy the judgment.  On February 27, 2004, the
trial court granted Jacobson=s turnover motion and ordered disbursal of
$54,077.59 of the $55,925.39 in proceeds in the court=s registry to
Jacobson.  Texas Civil Practice and Remedies Code section 31.002 sets forth a
procedure for a judgment creditor to obtain court assistance in securing
property to satisfy a judgment.  We review a trial court=s turnover order
for abuse of discretion.  Sivley v. Sivley, 972 S.W.2d 850, 859 (Tex.
App.CTyler 1998, no
pet.).








In her tenth issue, Broesche contends the trial court erred
in granting the turnover motion because the funds were in the court=s registry
pursuant to an illegal garnishment proceeding.  We reject this argument.  This
illegal garnishment theory was the basis of Broesche=s summary judgment
motion, which the trial court denied and which we have already concluded we
cannot review in this appeal.  Further, the funds in the court=s registry were
deposited pursuant to TIE=s interpleader, not a garnishment
proceeding.  Thus, garnishment rules do not apply.  See Daniels v. Pecan Valley
Ranch, Inc., 831 S.W.2d 372, 383 (Tex. App.CSan Antonio 1992,
writ denied) (finding garnishment rules no longer applied in interpleader
action involving funds held pursuant to writ of garnishment before being deposited
in court=s registry for
interpleader).  Funds in the court=s registry are
subject to the trial court=s control, and the court enjoys great
latitude in dealing with them.  Burns v. Bishop, 48 S.W.3d 459, 467
(Tex. App.CHouston [14th Dist.] 2001, no pet.).  The trial court
did not abuse its discretion in using properly interpleaded funds to enforce a
judgment within its jurisdiction.  See Kenseth v. Dallas County, 126
S.W.3d 584, 598 (Tex. App.CDallas 2004, pet. denied) (AThe trial court
always has authority to enforce its judgments and to disburse money held in its
registry.@); Burns, 48 S.W.3d at 467 (finding no abuse of
discretion in using funds in court=s registry to
enforce judgments within court=s jurisdiction).  We overrule Broesche=s tenth issue.

                                                 III.  Conclusion

Because we
conclude the divorce decree is ambiguous regarding the nature of the oil and
gas interests awarded to Broesche, we reverse the portion of the trial court=s judgment
interpreting the decree as a matter of law and remand for further proceedings
consistent with this opinion.  We affirm the remainder of the trial court=s judgment, the
June 17, 2003 sanctions order, the February 24, 2004 sanctions order, and the
February 27, 2004 turnover order.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Opinion filed March 8, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  So, for example, the first row,
corresponding to each of the five columns, reads: 

Calhoun, Frerich #1,
0.333333, 0.249998, A





[2]  The parties seemingly agree that a leasehold
interest is more valuable than an interest in the well, but they do not explain
or quantify the value of any leasehold interests.





[3]  A prominent oil and gas law treatise defines a
working interest as A[t]he operating interest under an oil and gas lease@ and notes that working interest is a synonym for
leasehold interest. 8 Howard R. Williams & Charles J. Meyers, Oil and Gas
Law, Manual of Terms, 562, 1191 (2005); see also Geodyne Energy
Income Prod. P=ship I-E v. Newton Corp., 161 S.W.3d 482, 486 n.10 (Tex. 2005) (citing
treatise).  Courts in Texas and around the country have relied on this treatise
when analyzing the meaning of a working interest in particular cases.  See
H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., 36 S.W.3d 597,
599 nn.2B3 (Tex. App.CAustin
2000, pet. denied); Karnes v. Salem Nat=l Bank (In
re Fullop), 125 B.R. 536, 544 (Bankr. S.D. Ill. 1990); Miller v.
Schwartz, 354 N.W.2d 685, 689 (N.D. 1984); see also Gore Oil Co.
v. Roosth, 158 S.W.3d 596, 597 n.1 (Tex. App.CEastland 2005, no pet.) (noting that leasehold interest owners are Acommonly referred to in the industry as working
interest owners@); Steger v. Muenster Drilling Co., 134 S.W.3d
359, 367 n.7 (Tex. App.CFort Worth 2003, pet. denied) (citing Black=s Law Dictionary in defining working interest as Athe
right to the mineral interest granted by an oil and gas lease@).





[4]  In her second issue, Broesche argues that Jacobson=s failure to specifically deny the allegation in her
live pleading that she Ahas met all conditions precedent entitling her to
title to the mineral interests in question@
means that Broesche is entitled to judgment for the leasehold interests as a
matter of law.  We disagree.  Although proof of performance of any conditions
precedent is an essential element of a plaintiff=s case, such proof does not relieve the plaintiff of the burden of
proving the other elements of the claim.  See Grimm v. Grimm, 864 S.W.2d
160, 161B62 (Tex. App.CHouston
[14th Dist.] 1993, no writ).  Thus, even if Jacobson failed to specifically
deny that Broesche met all conditions precedent, she is not thereby entitled to
judgment as a matter of law on her contract claim.  We overrule Broesche=s second issue.





[5]  These findings are listed in the February 24, 2004
order on Jacobson=s motion for sanctions and in the findings of fact and
conclusions of law supporting the final judgment.  The June 17, 2003 order
granting TIE=s motion for sanctions does not specify with
particularity the reasons for the sanctions order.  Broesche argues this
invalidates the sanctions order.  See Spiller v. Spiller, 21 S.W.3d 451,
456 (Tex. App.CSan Antonio 2000, no pet.) (noting some sanctions
provisions that require the trial court to make specific supporting findings). 
However, Broesche did not call this failure to the trial court=s attention, and therefore she did not preserve this
complaint for our review.  See id.; Alexander v. Alexander, 956
S.W.2d 712, 714 (Tex. App.CHouston [14th
Dist.] 1997, pet. denied).





[6]  Broesche cites General American Life Insurance
Co. v. Rodriguez, 641 S.W.2d 264, 268 (Tex. App.CHouston [14th Dist.] 1982, no writ), for the
proposition that attorneys= fees are
available only for the interpleader and not for defending a separate claim. 
That case involved an insurance company that interpleaded life insurance
proceeds and also defended counterclaims and cross-claims for a separate pool
of money involving accidental death benefits.  Id. at 265B66, 268.  Thus, the present case is distinguishable
because both the interpleader and the counterclaim involved a dispute over the
same funds.