Hugh Bob SPILLER, Appellant,

v.

Rob Roy SPILLER, in his capacity as Executor of the Estate of Hugh M. Spiller, Deceased, Luretha Spiller, and Richard Mosty, Appellees.

No. 04–99–00046–CV.

Court of Appeals of Texas, San Antonio.

April 5, 2000.

Kirby J. Roberts, Junction, for appellant.

' Richard C. Mosty, Keith & Weber, P.C., Kerrville, S. Preston Douglass, Jr., Wallace, Jackson, Machann, Williams & Douglass, PC, Kerrville, for appellee.

Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: TOM RICKHOFF, Justice.

This is the latest appeal arising from decades-long litigation over a parcel of land that the parties endearingly refer to as a "cow pasture." *See, e.g., Spiller v. Spiller,* 901 S.W.2d 553 (Tex.App.-San Antonio 1995, writ denied); *Spiller v. Spiller,* No. 04–85–00141–CV (Tex.App.-San Antonio June 4, 1986, n.w.h.) (not designated for publication); *Spiller v. Spiller,* 535 S.W.2d 683 (Tex.Civ.App.-Corpus Christi 1976, writ dism'd); *Spiller v. Sherrill,* 518 S.W.2d 268 (Tex.Civ.App.-San Antonio 1974, orig. proceeding). We will affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

For many years, Hugh Bob Spiller and his father, Hugh M. Spiller, were engaged in a dispute over ownership of the cow pasture. Hugh Bob claimed that Hugh M. gave the cow pasture to him. In the 1970s, Hugh Bob and his mother, Norma, occupied the cow pasture. Pursuant to the terms of an interlocutory order entered in the divorce proceeding between Norma and Hugh M., Norma was required to pay Hugh M. $250 per month in rent. Hugh Bob sent Hugh M. monthly rental checks on behalf of Norma. Hugh Bob also made improvements to the cow pasture and paid off a note executed by Hugh M. that was secured by the cow pasture. In 1984, a judgment was rendered quieting title to the cow pasture in Hugh M. The court also entered a money judgment in Hugh Bob's favor, reimbursing him for the improvements and for paying off the note. Hugh M. testified in the 1984 litigation that he did not cash any of the $250 rent checks

sent by Hugh Bob. Consequently, the court awarded him a credit against the money judgment for the unpaid rent. This court affirmed the trial court's judgment in all respects relevant to the current litigation. *See Spiller v. Spiller*, No. 04–85–00141–CV, slip op. at 1–4, 12 (Tex.App.-San Antonio June 4, 1986, n.w.h.).

Hugh Bob and Hugh M. disagreed about how to compute interest on the amounts awarded in the 1984 judgment, so they filed declaratory judgment actions, seeking an interpretation of the 1984 judgment. Hugh Bob also claimed that Hugh M. was not entitled to credit for the rental money because, contrary to his testimony in the 1984 litigation, Hugh M. had cashed the rent checks that Hugh Bob sent. Hugh M. died while this suit was pending. In 1993, the trial court rendered a judgment explaining how the interest should be computed and holding that Hugh Bob's claim regarding the rent checks was barred by res judicata. Again, this court affirmed the trial court's judgment in all respects relevant to the current litigation. *See Spiller v. Spiller*, 901 S.W.2d 553 (Tex. App.-San Antonio 1995, writ denied).

While the appeal of the 1993 judgment was pending, Hugh Bob entered into a contract with Rob Roy Spiller, the executor of Hugh M.'s estate, to purchase the cow pasture. Hugh Bob executed a $200,000 note, secured by the cow pasture, payable to Rob Roy as executor of Hugh M.'s estate. The note's principal was due 120 days after the 1993 judgment became final, and the amount due was to be offset by Hugh Bob's net recovery, if any, resulting from the 1993 litigation. More than 120 days after the 1993 judgment became final, Rob Roy made demand on Hugh Bob for the amount due on the note.

Hugh Bob commenced this suit, claiming that the amount demanded by Rob Roy was excessive and requesting the court to render a declaratory judgment stating the amount due to Hugh Bob under the 1993 judgment and, thereby, determining the pay-off amount for the note. Hugh Bob also asserted a fraud claim against Richard Mosty, the attorney for Hugh M. and his estate. Hugh Bob alleged that after the 1984 judgment was rendered, Mosty represented to him, through an intermediary, that he would be given credit for the rent checks that Hugh M. had cashed.

The appellees counter-claimed for judgment on the note, foreclosure of the lien, and attorney fees. They also filed a motion to declare Hugh Bob a vexatious litigant and a motion for sanctions. After conducting a hearing, the trial court entered an order assessing a $6000 sanction against Hugh Bob and an order declaring him a vexatious litigant and requiring him to post security in the amount of $25,000. Hugh Bob never posted the $25,000.

The appellees propounded interrogatories and requests for admissions to Hugh Bob. Some of the requests for admissions were followed by interrogatories asking for information upon which a denial was made. Although Hugh Bob timely responded to the requests for admissions, he did not answer some of the interrogatories related to admissions that he denied. The appellees therefore requested the court to deem these matters admitted because Hugh Bob's refusal to answer the interrogatories rendered his answers to the requests for admission evasive. The appellees also filed a motion for partial summary judgment, seeking summary judgment on all issues except their request for attorney fees.

Hugh Bob did not file a response to the motion for partial summary judgment. On the day scheduled for the summary judgment hearing, he filed an objection to the setting and a motion for continuance. He argued in these documents that the litigation was stayed as a result of the appellees' motion to declare him a vexatious litigant, that because of the stay, he could not file responses to the appellees' motions, and that the court was required to dismiss the cause because he had not posted the $25,000 security. He requested a

continuance to file a response to the motion for partial summary judgment in the event the court overruled his arguments regarding the stay and the dismissal.

The trial court overruled the objection to setting and the motion for continuance and granted the appellees' motion to deem matters admitted and their motion for partial summary judgment. The court subsequently conducted a hearing on the appellees' request for attorney fees and, on October 8, 1998, signed a final judgment denying all relief requested by Hugh Bob, allowing Hugh M.'s estate to foreclose on the lien, and awarding the estate $155,-457.73, post-judgment interest, and attorney fees. On the same day, the court signed an order dismissing the cause as a result of Hugh Bob's failure to post the $25,000 security.

On appeal, Hugh Bob raises eight points of error, complaining that the trial court erred in the following respects: 1) finding that he is a vexatious litigant; 2) granting the partial summary judgment; 3) granting the motion to deem matters admitted; 4) holding that he had not responded to interrogatories; 5) overruling the motion for continuance; 6) overruling the objection to setting; 7) entering the sanctions order; and 8) holding that the amount due on the note was $155,457.73.

## VEXATIOUS LITIGANT

■ Hugh Bob argues the trial court erred in declaring him a vexatious litigant for several reasons. First, he points out that this suit was commenced before the effective date of the vexatious litigant statutes. The statutes took effect on September 1, 1997, and apply only to the filing of litigation on or after that date. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 806, § 2, 1997 Tex. Gen. Laws 2634, 2636. The suit was filed on January 17, 1997. Therefore, the statutes clearly do not apply to this suit. But we find no indication in the record that Hugh Bob pointed this out to the trial court. Accordingly, the error is waived. *See* TEX.R.APP. P. 33.1(a).

■ Second, Hugh Bob argues, as he argued before the trial court, that the appellees' motion to declare him a vexatious litigant was untimely. We agree. A defendant may move for such an order "on or before the 90th day after the date the defendant files the original answer or makes a special appearance." TEX. CIV. PRAC. & REM.CODE ANN. § 11.051 (Vernon Supp.2000). Rob Roy and Mosty filed their answer on February 25, 1997; Luretha filed her answer on September 19, 1997; and the motion to declare Hugh Bob a vexatious litigant was filed on June 17, 1998. Thus, the motion was untimely.

■ Third, Hugh Bob argues, as he argued before the trial court, that the appellees did not satisfy all the criteria for declaring him a vexatious litigant because he did not appear *in propria persona*. Again, we agree. A court may declare a plaintiff to be a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail and that after litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate the same issues "in propria persona." *See id.* § 11.054(2). *In propria persona* is synonymous with *pro se;* it refers to a situation in which a litigant represents himself or herself without the benefit of a lawyer. *See Coyle v. State,* 775 S.W.2d 843, 845 (Tex.App.-Dallas 1989, no pet.); BLACK'S LAW DICTIONARY 712 (5th ed.1979). Hugh Bob was represented by a lawyer in this suit and in the 1984 and 1993 litigations.

We sustain Hugh Bob's first point of error. The trial court erred in declaring Hugh Bob a vexatious litigant. As explained below, however, we find no error in the trial court's decision to grant the appellees' motion for partial summary judgment. Therefore, the court's error in declaring Hugh Bob a vexatious litigant is immaterial.

## Summary Judgment

Hugh Bob argues the trial court erred in granting the partial summary judgment and in overruling his objection to setting and motion for continuance because the litigation was stayed pursuant to section 11.052 of the Texas Civil Practice and Remedies Code. For the same reason, he argues the court erred by deeming matters admitted and holding that he had not responded to interrogatories. Section 11.052 provides, "On the filing of a motion [to declare the plaintiff a vexatious litigant], the litigation is stayed and the moving defendant is not required to plead" until ten days after the motion is denied or, if the motion is granted, ten days after the defendant receives written notice that the plaintiff has posted security. TEX. CIV. PRAC. & REM.CODE ANN. § 11.052(a). Based on this automatic stay provision, Hugh Bob argues that he would have risked being held in contempt of court if he had responded to the appellees' motions.

■ Hugh Bob's argument is unconvincing. We note that *after* the motion to declare Hugh Bob a vexatious litigant was filed, Hugh Bob responded to the requests for admissions without mentioning the stay. In his written request for an extension of time to respond to the interrogatories, the only ground asserted for the extension was that counsel's father was ill. Hugh Bob eventually filed a response to the interrogatories, but failed to answer some of the interrogatories without any explanation. In short, Hugh Bob never raised the issue of the stay until the day of the summary judgment hearing, when he argued in his objection to the setting that the stay prevented him from responding to the appellees' motions. Hugh Bob offered no explanation as to why he could not file his response to the summary judgment motion subject to his objection. Instead, he argued that as a result of his failure to comply with the court's order to post security, the court should dismiss the entire cause, including the appellees' counterclaims. Under these circumstances, the trial court did not err in going forward with the hearing. While it is true that the trial court erred in declaring Hugh Bob a vexatious litigant, Hugh Bob was not entitled to capitalize on that error by inviting further error. And the trial court would have been justified in concluding that Hugh Bob's objections based on the stay were untimely.

■ Hugh Bob also argues that the trial court erred in holding that the amount due on the note was $155,457.73 "by holding that [he] was denied interest upon accrued but unpaid interest." The appellees presented summary judgment evidence that the amount due on the note was $155,457.73 on the date of the summary judgment hearing, as well as evidence showing how this amount was calculated. Hugh Bob did not file a response to the motion for partial summary judgment; thus, he did not present any evidence regarding the amount due on the note, nor did he raise his argument regarding interest on accrued but unpaid interest. In a summary judgment case, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX.R. CIV. P. 166a(c); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Accordingly, we find no reversible error in the trial court's holding that the amount due on the note was $155,-457.73.

We overrule Hugh Bob's second through sixth points of error and his eighth point of error.

## Sanctions

Finally, Hugh Bob argues the trial court erred in assessing a $6000 sanction against him. In their motion for sanctions, the appellees argued that Hugh Bob was attempting to recover for the rent checks, even though he had already failed to recover for them in the 1984 and 1993 litigations. They requested, and the trial court

ordered, sanctions under Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code.

Rule 13 provides for sanctions when a party files a pleading that is groundless and brought in bad faith or for harassment. *See* TEX.R. CIV. P. 13. Under Rule 13, a sanction order must be supported by good cause, "the particulars of which must be stated in the sanction order." *Id.* Chapter 10 similarly forbids frivolous pleadings. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon Supp.2000). In an order imposing a sanction under Chapter 10, the court "shall describe ... the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." *Id.* § 10.005.

■ In this case, the trial court's order does not include the findings required by Rule 13 and Chapter 10. But because Hugh Bob did not call this failure to the trial court's attention, we will not consider it as a basis for reversal. *See* TEX.R.APP. P. 33.1(a); *Schexnider v. Scott & White Mem'l Hosp.,* 953 S.W.2d 439, 441 (Tex. App.-Austin 1997, no pet.).

■ The imposition of sanctions is within the trial judge's sound discretion, and we will not reverse unless the judge clearly abused that discretion. *See GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993). The trial judge who presided over the sanctions hearing also presided over the 1993 litigation. It is apparent from the record that the judge considered the evidence presented in that litigation in determining that Hugh Bob's claim of fraud against Mosty was frivolous. Hugh Bob's fraud claim hinged on his allegation that after the 1984 judgment was rendered, Mosty assured him that he would be given credit for the rent checks that Hugh M. had cashed. Hugh Bob knew about Hugh M.'s allegedly false testimony and about Mosty's assur-

ance before he commenced the 1993 litigation. As the trial judge noted, Hugh Bob raised the issue of Mosty's assurance during the 1993 litigation. Hugh Bob's testimony demonstrates that he learned that Mosty was reneging on the assurance no later than June 1992. Although one purpose of the 1993 litigation was to obtain a credit for the rent checks, Hugh Bob did not assert his fraud cause of action against Mosty.

Considering his experience with these parties and his knowledge of the prior litigation, the trial judge did not abuse his discretion by concluding that the fraud claim against Mosty was frivolous. We overrule Hugh Bob's seventh point of error.

The final judgment signed on October 8, 1998 is affirmed.