Affirmed and Memorandum Opinion filed March 16, 2006









Affirmed
and Memorandum Opinion filed March 16, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00055-CV

____________

 

JOYCE WOLTER, Appellant

 

V.

 

JOE DELGATTO, MADELINE
DELGATTO, ELDON SHEFFER, MICHAEL COLE, LYNN JOHNSON, STANLEY BEYER, JEANIE
FLOWERS, DOUGLAS HARPER, JODY HARRINGTON,
JOHN HIRLING, JERRY HURST, ROY KEEZEL, LEONA NICKERSON,
LOUISE ROW, TOM LORD, HOUSTON HOUSING
MANAGEMENT CORPORATION, HOPWA HOUSING CORPORATION, INDEPENDENT HEIGHTS, INC.,[1]
ROSE MARIE HAMMOND, GENE HEAD, CHARLES WINDHAM, PATTY ELLIS, WALTER ELLIS,
JAMES MCCLAIN, SUZY CISNE, BARBARA PUCKETT,
DIANE FIELDER MCGEHEE, AND DIANE SPRINGER,[2]
Appellees

 



On Appeal from the 280th
District Court

Harris County, Texas

Trial Court Cause No. 2004-18090










M
E M O R A N D U M   O P I N I O N

Appellant Joyce
Wolter appeals the trial court=s dismissal of her
case against appellees for lack of subject matter jurisdiction and for failing
to post bond as a vexatious litigant. 
She also appeals the trial court=s designation of
her as a vexatious litigant.  We affirm.

Factual and
Procedural Background

Wolter is a former member, trustee, and
elder of Heights Presbyterian Church (AH.P.C.@).  H.P.C. is a member church within the
Presbytery of New Covenant, which is part of the denominational Presbyterian
Church (U.S.A.).  The Presbyterian Church
is a hierarchical organization governed by a three-part constitution.  The second part of the constitution is the Book
of Order, which establishes representative governing bodies within the church.








          In the mid-1990s, H.P.C. received a
$1,000,000 bequest from a deceased member, John Fakes.  Around 2001, H.P.C.=s governing body
decided to sponsor the Independent Heights Project (the AHeights Project@), a Housing and
Urban Development (AH.U.D.@) project
benefitting low-income senior citizens. 
Wolter, who opposed sponsorship of the Heights Project, accused several
defendants of converting $600,000 from the Fakes fund and financially
obligating H.P.C. to the Heights project.[3]  Instead of seeking relief from the
Presbyterian ecclesiastical courts, Wolter filed suit in the 280th District
Court of Harris County through her son John WorldPeace, an attorney who was
subsequently disbarred.  In her suit,
Wolter made multiple claims against a number of defendants,[4]
most of whom were H.P.C. members.  The
majority of Wolter=s claims were based on alleged violations
of the Book of Order by members of H.P.C.








Because Wolter=s lawsuit
disrupted the church, H.P.C. created an ad hoc administrative commission to
investigate her claims.  The commission
retained an accounting firm to perform a financial review of H.P.C. and also
conducted its own review of H.P.C.=s minutes and
financial records for the preceding nine years. 
In addition to the financial review, the commission interviewed several
church members, including Wolter.  Based
on this investigation, the commission determined that no money had been
converted and that H.P.C. was not contractually obligated to finance the
Heights Project.  Thereafter, on
September 16, 2003, the trial court dismissed all of Wolter=s claims except
her slander claims against two church members. 
In doing so, the trial court noted H.P.C. had its own procedure for
dealing with Wolter=s claims, the dismissed claims were
probably beyond its jurisdiction, and Wolter probably lacked standing on those
claims.[5]  The remaining slander claims were set for
trial on April 7, 2004 and then dismissed for want of prosecution when Wolter
failed to appear.  However, Wolter
subsequently refiled her entire lawsuit pro se, including the claims dismissed
on September 16, 2003.  Appellees filed a
plea to the jurisdiction arguing that Wolter=s claims were not
subject to resolution in courts because they were ecclesiastical and also filed
a motion to declare Wolter a vexatious litigant.  After a hearing on August 20, 2004, the trial
court granted appellees= plea to the jurisdiction on all but two
claims, declared Wolter a vexatious litigant, and ordered her to post a $10,000
security bond by October 20, 2004 to continue with her remaining claims.  When Wolter failed to timely post bond, the
trial court dismissed her entire case. 
Wolter filed a motion for new trial that was overruled by operation of
law, and this appeal followed.

Subject Matter
Jurisdiction

In her first issue, Wolter claims the trial court erred in
granting appellees= plea to the jurisdiction.  She argues the trial court had jurisdiction
over her claims against the church because they relate to financial and not
doctrinal matters.

A plea to the jurisdiction is a dilatory plea seeking to
defeat a plaintiff=s claims regardless of merit by
challenging a court=s jurisdiction to hear the subject matter
of the dispute.  Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); Lacy v. Bassett, 132
S.W.3d 119, 122 (Tex. App.BHouston [14th Dist.]
2004, no pet.).  When deciding a plea to
the jurisdiction, the trial court looks to the plaintiff=s petition and
accepts its allegations as true but may also consider evidence relevant to
resolving jurisdictional issues.  Bland,
34 S.W.3d at 555.  To prevail, the
defense must show that, even if all allegations in the plaintiff=s pleadings are
true, an incurable jurisdictional defect remains on the face of the pleadings
that deprives the trial court of subject matter jurisdiction.  Brenham Hous. Auth. v. Davies, 158
S.W.3d 53, 56 (Tex. App.BHouston [14th Dist.] 2005, no pet.).  We review de novo the trial court=s ruling on a plea
to the jurisdiction.  Tex. Dep=t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  








The First Amendment to the United States Constitution,
applied to the States through the Fourteenth Amendment, provides that ACongress shall
make no law respecting an establishment of Religion, or prohibiting the free
exercise thereof.@  U.S. Const. amends. I, XIV.  Therefore, among other things, the First
Amendment prohibits civil courts from resolving church disputes on the basis of
religious doctrine and practice.  Jones
v. Wolf, 443 U.S. 595, 602 (1979). 
Although wrongs may exist in the ecclesiastical setting that the church
administration may be unable to remedy, the preservation of free exercise of
religion overshadows any inequities that may result from liberal
application.  Williams v. Gleason,
26 S.W.3d 54, 59 (Tex. App.BHouston [14th
Dist.] 2000, pet. denied).  If the matter
cannot be resolved without delving into a religious controversy, the court must
defer to the resolution of the doctrinal issue by the authoritative
ecclesiastical body.  Jones, 443 U.S.
at 604.  Further, in determining whether
a suit is ecclesiastical or instead concerns property rights, torts, or
criminal conduct, we look to the substance and effect of the plaintiff=s petition rather
than how the claims are labeled.  See
Williams, 26 S.W.3d at 59.

This case ultimately concerns whether H.P.C. members
properly followed procedures prescribed by the Book of Order when they involved
H.P.C. in the Heights Project.  This is
true despite Wolter=s attempt to invoke the trial court=s jurisdiction by
framing her claims in civil terms.  See
id.  Wolter=s claims, viewed
substantively and considering the effect of their resolution by a civil court,
relate to how and when H.P.C. may spend its resources and are thus ecclesiastic
in nature.  We can neither resolve them
nor accommodate Wolter=s request to parse the Presbyterian Book
of Order into secular and ecclesiastical components without delving into a
religious controversy.  See Jones,
443 U.S. at 604.  Thus, we find that
Wolter=s claims are
beyond the trial court=s subject matter jurisdiction.  Accordingly, we overrule Wolter=s first issue.

Vexatious Litigant








In her second and third issues, Wolter claims the trial
court erred in declaring her a vexatious litigant and requiring her to post a
security bond on her remaining claims pursuant to Chapter 11 of the Civil
Practice and Remedies Code.  A trial
court may designate a plaintiff a vexatious litigant if the defendant shows
there is no reasonable probability the plaintiff will prevail in her suit and
the plaintiff repeatedly attempted to relitigate issues in propria persona[6]
after those issues were finally determined against her.  See
Tex. Civ. Prac. & Rem.
Code Ann. _ 11.054 (Vernon
2002).  We review a trial court=s determination
that a plaintiff is a vexatious litigant for abuse of discretion.  See Nabelek v. Johnson, No.
04-03-00269-CV, 2005 WL 762944, at *2 (Tex. App.BSan Antonio Apr.
6, 2005, no pet.) (mem. op.); Forist v. Vanguard Underwriters Ins. Co.,
141 S.W.3d 668, 670 (Tex. App.BSan Antonio 2004,
no pet.).  

Wolter contends that the trial court=s dismissal of her
claims for want of prosecution was not an adjudication of her rights and that
merely refiling her claims cannot be the basis for declaring her a vexatious
litigant.  However, when the trial court
dismissed all but Wolter=s slander claims on September 16,
2003, it commented as follows:

The court is
further convinced that there is no good faith claim that any money has been
stolen, but rather a creative pleading on Plaintiff=s part complaining
that she does not like the way the money was spent.  The Court has become convinced that it has no
jurisdiction to decide Plaintiff=s claims, and that
such claims amount only to a question of whether it was a good idea or a bad
idea for the church to get involved in a certain project.   

This was a dismissal with prejudice of all but Wolter=s slander claims,
meaning the merits of the dismissed claims were finally determined.  See Harris County v. Sykes, 136 S.W.3d
635, 640 (Tex. 2004) (A[A] dismissal constitutes a final
determination on the merits of the matter actually decided.@).  Nevertheless, Wolter refiled all her claims in
propria persona on July 16, 2004. 
Considering the trial court=s previous
dismissal and its concurrent comments, we find it did not abuse its discretion
in designating Wolter a vexatious litigant. 








Wolter also asserts that the trial court
abused its discretion by requiring her to file a security bond before
proceeding with her lawsuit.  However, in
her brief Wolter provides no authority or argument for this issue; therefore,
she waived it for appellate review.  See
Tex. R. App. P. 38.1(h) (AThe brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@); McMahan v.
Greenwood, 108 S.W.3d 467, 485 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied) (finding appellant waived claim by failing to present
argument or authority on appeal).[7]  Accordingly, we overrule Wolter=s second and third
issues.

We affirm the trial court=s judgment.  

 

 

 

/s/      Leslie
Brock Yates

Justice

 

Judgment rendered
and Memorandum Opinion filed March 16, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Anderson.

 











[1]  Wolter
alternately refers to AIndependent@ and AIndependence@
Heights.  For purposes of this opinion,
we use AIndependent.@





[2]   The appellees named in the case
style are those named in Wolter=s last live pleading, her first amended original
petition.  The trial court=s October 21, 2004 order of
dismissal did not list all defendants by name, but rather dismissed Wolter=s entire case, Aincluding all parties, whether named
above or not.@ 





[3]  In her
eleventh amended original petition, Wolter claimed several defendants Aconverted and embezzled $600,000 of the Fakes bequest
and illegally obligated Heigths [sic] Presbyterian Church (HPC) to the
Independence [sic] Heights Project (IHP)[,] a corrupt HUD project.@  Specifically,
she claimed certain defendants purchased property in Aa depressed, high crime, Black neighborhood which runs
rampant with prostitution@ and obligated H.P.C. to build a low-income retirement
home there without the authority required by the Book of Order.  According to Wolter, one of the defendants
then called Aan illegal, by church rules, special session meeting@ to vote on the Heights Project.  Consequently, Wolter decided to file suit as
a then-trustee of H.P.C.





[4]   Wolter asserted claims for various acts of
fraud and conspiracy, conversion, breach of fiduciary duty, DTPA violations,
intentional infliction of emotional distress, 
slander, and breach of contract. 
She also sought the removal of a trustee and sanctions for Afrivolous and groundless@ acts of defendants and their
attorneys. 

 





[5]  The trial
court noted that since filing her claim, Wolter had been removed as a trustee
at H.P.C. and consequently Ano longer has this thin claim to standing.@

 





[6]  Litigating in propria persona
is synonymous with litigating pro se.  See
Spiller v. Spiller, 21 S.W.3d 451, 454 (Tex. App.BSan Antonio 2000, no pet.).        





[7]  Even if Wolter had not waived this
issue, the trial court, upon declaring Wolter a vexatious litigant, was required
to order her to post security for appellees= benefit.  See Tex. Civ. Prac. & Rem. Code Ann. _ 11.055(a) (Vernon 2002).