Martin RAMIREZ and Domingo Garcia, Appellants

v.

ENCORE WIRE CORPORATION, Appellee.

No. 05–05–00536–CV.

Court of Appeals of Texas, Dallas.

July 11, 2006.

Domingo Garcia, Law Office of Domingo Garcia, P.C., Dallas, pro se.

Thomas B. Cowart, Turley Law Firm, Dallas, for Appellant.

Ryan Griffits, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion by Justice MORRIS.

In this summary judgment case, we review the trial court's dismissal of a terminated employee's retaliatory discharge claims. We also review two sanction orders granted against the employee's attor-

ney. In their appeal, Martin Ramirez and his attorney, Domingo Garcia, contend the trial court erred in dismissing Ramirez's claims that he was discharged by Encore Wire Corporation in retaliation for filing a workers' compensation claim. Garcia separately contends the trial court erred in concluding he forged three summary judgment affidavits and sanctioning him under Texas Rule of Civil Procedure 166(a)(h). Garcia also contends the trial court erred in sanctioning him under Texas Rule of Civil Procedure 13 and chapter 10 of the Texas Civil Practice and Remedies Code for filing a frivolous and harassing lawsuit. After reviewing the summary judgment record, we conclude the trial court's dismissal of Ramirez's retaliatory discharge claims was proper. We further conclude, however, that the trial court erred in sanctioning Garcia. Accordingly, we affirm the trial court's summary judgment in favor of Encore. We vacate the trial court's sanction order rendered under Texas Rule of Civil Procedure 166(a)(h) as well as the sanction order under Texas Rule of Civil Procedure 13 and chapter 10 of the Texas Civil Practice and Remedies Code.

## I.

The record reveals that Martin Ramirez was employed as a cabler with Encore Wire Corporation. On April 2, 2002, Ramirez suffered an injury to his lower back while working on the job. Ramirez reported his injury to Encore and went on a disability leave of absence.

At the time of Ramirez's injury, Encore had in place a disability leave policy. The disability leave policy stated that any employee whose absences exceeded thirty-six calendar days in a twelve-month period, exclusive of any leave to which he was entitled by law, would be subject to automatic termination. Under the federal Family and Medical Leave Act, employees may be entitled to twelve weeks of disability leave. With the additional thirty-six days of leave granted under Encore's disability leave policy, the company allowed Ramirez one hundred and twenty days of leave from work.

In July 2002, Encore sent Ramirez two letters, each stating that his disability leave would expire on August 1, 2002. The letters further stated that if Ramirez did not return to work by that date, his employment would be terminated. Ramirez acknowledged receiving the two letters but stated that he did not understand them because he does not speak or read English.

On August 1, 2002, Encore sent Ramirez a final letter informing him that his employment had been terminated pursuant to the company's disability leave policy. The letter also stated that in the event Ramirez was released to return to work, he was encouraged to reapply for a position at Encore.

Ramirez hired attorney Domingo Garcia to represent him in this lawsuit against Encore. In his petition, Ramirez asserted various claims against Encore based on his alleged wrongful termination in retaliation for filing a workers' compensation claim. Encore answered and filed a motion for sanctions against Garcia under chapter 10 of the Texas Civil Practice and Remedies Code and rule 13 of the Texas Rules of Civil Procedure. Encore asserted in its motion for sanctions that Ramirez's suit was frivolous, groundless, and brought for the purpose of harassment. In support of this assertion, Encore noted that, in the past, Garcia had brought substantively identical suits against Encore on behalf of other former employees and each case was resolved in Encore's favor.

Encore also moved for both a traditional and a no-evidence summary judgment on Ramirez's claims. Encore contended it

was entitled to a traditional summary judgment on Ramirez's claims for wrongful termination because the evidence showed that Encore terminated Ramirez solely because of the uniform application of a reasonable absence control policy. In the alternative, Encore argued Ramirez could produce no evidence to show either a causal connection between his termination and his workers' compensation claim or that his termination under the disability leave policy was a mere pretext for discrimination.

Ramirez responded that the evidence showed Encore had a negative attitude toward employees who filed workers' compensation claims. According to Ramirez, this evidence demonstrated a causal connection between his workers' compensation claim and his termination. In support of this argument, Ramirez submitted the affidavits of seven former employees of Encore and a physician who treated Encore's employees for work-related injuries. Ramirez further argued that Encore's disability leave policy was not reasonable because it discriminated against those workers who sustained the most serious injuries.

Encore filed numerous objections to Ramirez's summary judgment evidence. In addition, Encore again moved for sanctions against Garcia, contending that one of Garcia's employees forged the signatures on three of the affidavits filed as part of Ramirez's summary judgment evidence. Garcia denied any knowledge of the alleged forgeries but withdrew the challenged affidavits from consideration by the court.

Following a hearing, the trial court sustained Encore's objections to Ramirez's summary judgment evidence and granted the motion for sanctions brought for the allegedly forged affidavits. The trial court then granted Encore's motion for summary judgment and dismissed Ramirez's claims. Finally, the trial court granted Encore's other motion to sanction Garcia for filing a frivolous and harassing lawsuit. Both Ramirez and Garcia appealed.

## II.

■ The issues before us concern not only the merits of the suit, but also the conduct surrounding its filing and the manner in which it was prosecuted. We first address the propriety of the trial court's summary judgment disposing of Ramirez's claims on the merits. On this issue, Ramirez contends the trial court erred in granting summary judgment against him because Encore failed to establish conclusively that his termination was required by the uniform enforcement of a reasonable absence control policy. Ramirez further argues he presented sufficient evidence to create a fact issue on each of the challenged elements of his claims.

The standard of review for both a traditional and a no-evidence summary judgment is well known. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Gen. Mills Rest. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). With respect to its traditional motion for summary judgment, Encore had the burden to demonstrate that no genuine issues of material fact existed and it was entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548–49. To defeat the no-evidence summary judgment, however, Ramirez was required to present sufficient evidence to raise a genuine issue of fact on each challenged element of his claims. *See Gen. Mills*, 12 S.W.3d at 832–33. Because the trial court granted Encore's summary judgment without specifying the grounds on which it was based, Ramirez must establish that each summary judgment ground alleged by Encore was insufficient

to support the trial court's judgment. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

■ Ramirez's claims for wrongful termination in this case were brought under section 451.001 of the Texas Labor Code. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon 2006). Under section 451.001, an employer may not discharge an employee because the employee filed a workers' compensation claim in good faith. *Id.* Merely informing the employer of an on-the-job-injury is sufficient to invoke the protections of section 451.001. *See Hunt v. Van Der Horst Corp.,* 711 S.W.2d 77, 80 (Tex.App.-Dallas 1986, no writ). Encore moved for a traditional summary judgment on the ground that Ramirez was terminated not because he filed a workers' compensation claim, but because his absence from work exceeded the number of days allowed under its disability leave policy. The Texas Supreme Court has held that the uniform enforcement of a reasonable absence control policy does not constitute retaliatory discharge under section 451.001. *Tex. Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313 (Tex.1994). If a defendant employer shows that the plaintiff's discharge resulted from the uniform enforcement of its reasonable absence control policy, then no violation of section 451.001 is shown as a matter of law. *See Alonso v. Stanley Works, Inc.,* 111 S.W.3d 850, 852 (Tex.App.-Dallas 2003, no pet.).

As part of its summary judgment evidence, Encore submitted a copy of its disability leave policy and the affidavit of its human resource manager, Brad Rattan. Rattan testified that under Encore's disability leave policy, an employee is permitted to be absent for thirty-six calendar days within a twelve-month period in addition to any family and medical leave he is entitled to by law. Therefore, according to Rattan, an employee who is eligible for leave under the federal Family and Medical Leave Act can be absent for a total of one hundred and twenty days in a twelve-month period before being discharged. Rattan further testified that Encore's disability leave policy applies to employees who are unable to work because of injury, illness, or other disability regardless of whether the disability is work-related. Rattan stated the policy is applied neutrally and employees whose absences exceed the amount of time designated by the policy are "automatically terminated."

Attached to Rattan's affidavit were three letters sent to Ramirez by Encore. The first two letters informed Ramirez that his employment would be terminated automatically if he did not return to work by August 1, 2002. The third letter, which was sent on August 1, stated that Ramirez's employment had been terminated pursuant to Encore's disability leave policy. Both the second and third letter encouraged Ramirez to reapply for a position with the company in the event he was released to return to work. In his deposition, Rattan testified he knew of at least two employees who were terminated under Encore's disability leave policy but later returned to work for Encore after they reapplied for a position.

Ramirez argues this evidence is insufficient to establish Encore's entitlement to summary judgment because a fact issue exists about whether Encore uniformly applied its disability leave policy. In support of this argument, Ramirez points to a single portion of Rattan's deposition in which Rattan was asked whether he knew of any employees who "were injured and were off duty for 120 days or more and then returned to Encore." Rattan responded "yes." This testimony should be read in context, however. Rattan's response is entirely consistent with his other deposition testimony that workers at Encore were

terminated after being absent for more than one hundred and twenty days and were later rehired by the company when they reapplied for a position. Furthermore, Rattan stated unequivocally in his affidavit that employees whose absences due to disability exceed the number of days allowed were automatically terminated. This was true regardless of the reason for their disability. Ramirez presented no evidence showing that any employee had ever exceeded the one-hundred-and-twenty-day absence period and was allowed to retain his job. Even reading Rattan's deposition testimony in the light most favorable to Ramirez, as we must, the single ambiguous statement provides less than a scintilla of evidence to create a fact issue on uniformity. *See Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 795 (Tex.App.-Dallas 2005, no pet.) (evidence is less than scintilla when it is so weak as to do no more than create mere surmise or suspicion).

■ Ramirez also argues Encore was not entitled to summary judgment because the company failed to provide proof of the "reasonableness" of its absence control policy.[1] The summary judgment evidence included the terms and conditions of Encore's written disability leave policy. The policy applies neutrally without regard to the reason for an employee's disability. On its face, the terms and conditions of the leave policy are reasonable. Ramirez cites no case law, and we have found none, to suggest that any further proof of reasonableness is necessary. We hold that a facially reasonable absence control policy is proof of the reasonableness of that policy. Therefore, contrary to Ramirez's ar-

gument, Encore did not fail to provide proof of the reasonableness of its policy.

■ Even though Encore's policy is facially reasonable, Ramirez attempts to challenge the reasonableness of the policy by suggesting it unfairly discriminates against those who are most seriously injured. Ramirez fails to explain, however, how any such discrimination bears any relevance to his retaliatory discharge claim. Although the Texas Supreme Court stated that an employer is not liable for retaliatory discharge when it enforces a "reasonable" absence control policy, it is clear that reasonableness in this context is only relevant to the extent it relates to the retaliation claim. *See Carrozza*, 876 S.W.2d at 313. It is not retaliatory under section 451.001 for an employer to enforce an arguably onerous absence control policy against employees who have filed workers' compensation claims if the same policy is applied in the same manner against employees who have not filed workers' compensation claims.

■ The central question in a section 451.001 retaliation claim is whether the employee's termination would have occurred when it did but for his filing a workers' compensation claim. *See Alonso*, 111 S.W.3d at 852. Severity of the injury or disability bears no relationship to the filing of a workers' compensation claim. Accordingly, even if the effect of Encore's policy is to terminate those employees who suffer the most serious injuries, so long as the absence policy requires termination regardless of whether the injury is work-related, enforcement of the policy is not retaliatory such that it would be a prohibited act under section 451.001.

1. We note that Ramirez additionally contends Encore failed to assert in its motion for summary judgment that he was terminated due to the enforcement of a *reasonable* absence control policy. This argument is without merit.

Encore's motion for summary judgment clearly asserts it is entitled to summary judgment because the uniform enforcement of a *reasonable* absence control policy is not retaliatory as a matter of law.

Based on our review of the entire summary judgment record, including those portions of Ramirez's evidence struck by the trial court, we conclude Encore showed it was entitled to judgment as a matter of law. Accordingly, the trial court did not err in granting summary judgment in favor of Encore. Because none of Ramirez's evidence was sufficient to create a fact issue, it is unnecessary for us to address Ramirez's arguments challenging the trial court's rulings striking his summary judgment evidence.

■ Ramirez's summary judgment evidence, however, forms the basis of one of the trial court's two sanction orders against Domingo Garcia. In its second motion for sanctions, Encore accused Garcia of filing forged affidavits in support of Ramirez's response to the motion for summary judgment. Specifically, Encore alleged that one of Garcia's employees signed three of the submitted affidavits. Garcia denied any knowledge of the alleged forgeries but withdrew the affidavits from consideration as part of the summary judgment evidence. The trial court concluded the affidavits were forged and filed in bad faith. The court then granted the motion for sanctions "pursuant to Tex.R. Civ. P. 166a(h)" and ordered Garcia to pay Encore $2,500 within ten days of the date of the order.

■ Garcia contends the trial court erred in sanctioning him under rule 166a(h) because the rule does not provide for sanctions against a party's attorney. We agree. When a sanction order refers to one specific rule, as in this case, we are confined to determining whether the sanction is appropriate under that particular rule. *See Metzger v. Sebek,* 892 S.W.2d 20, 51 (Tex.App.-Houston [1st Dist.] 1994, writ

denied). Texas Rule of Civil Procedure 166a(h) states

> [s]hould it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to [rule 166a] are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of reasonable expenses which the filing of the affidavit caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Tex.R. Civ. P. 166a(h). The rule clearly delineates the actions a court may take against a party and the actions it may take against a party's attorney. *See id.* Only a party can be sanctioned and ordered to pay the other party's reasonable expenses. *Id.* In contrast, either the party or his attorney may be held in contempt. *Id.*

In its motion for sanctions, Encore requested that Garcia be ordered to pay the company's attorney's fees and costs incurred in filing the motion. Encore also requested Garcia be ordered to pay a $5,000 penalty to the court. Thus, Encore sought both sanctions and a judgment of contempt against Garcia. The trial court declined to hold Garcia in contempt but ordered him to pay Encore $2,500. In doing so, the court did not follow the plain language of the rule it relied upon in making its decision. Because rule 166a(h) does not authorize sanctions against an attorney for filing an affidavit in bad faith, the trial court abused its discretion in sanctioning Garcia under that particular rule.

■ We further conclude the trial court abused its discretion in sanctioning Garcia under rule 13 of the Texas Rules of Civil Procedure and chapter 10 of the Texas Civil Practice and Remedies Code.[2] En-

2. Rule 13 of the Texas Rules of Civil Procedure states: dure states:

core sought sanctions against Garcia for filing a frivolous and harassing lawsuit. The trial court granted the motion concluding the suit was legally and factually groundless and filed in bad faith for the purpose of harassment. The trial court based its conclusion primarily on the fact that Garcia had prosecuted similar cases against Encore on behalf of other plaintiffs and those cases were decided against his clients. The court ordered Garcia to pay Encore's attorney's fees and costs in the amount of $10,000.

 Whether one plaintiff's lawsuit is groundless, however, cannot be judged based solely on the outcomes of other plaintiffs' lawsuits. The anticipation of a potentially successful defense does not render a plaintiff's suit frivolous. Each plaintiff's suit brings with it different facts and circumstances as well as potentially different arguments. For example, although the trial court stated the validity of Encore's absence control policy had been proven to Garcia before he filed this suit, there is no showing that the "reasonable-

ness" of the absence control policy had ever been decided in the earlier suits. Although we have decided that issue in Encore's favor, the meaning of the term "reasonable" in connection with an absence control policy had not been judicially determined at the time Garcia filed this lawsuit. Garcia's arguments, therefore, cannot be said to be frivolous.

 The trial court also stated the suit was without merit because Ramirez was unable to return to work. Ramirez's alleged inability to return to work may have been used by Encore as a defense to show that Ramirez had not suffered any damages as a result of his alleged wrongful termination. But it would have been Encore's burden to prove that fact. Again, the mere anticipation of a defense that may or may not be raised by a defendant and may or may not be successful does not render a suit groundless and brought in bad faith or for the purposes of harassment.

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanctions available under Rule 215–2b, upon the person who signed it, a represented party, or both. TEX.R. CIV. P. 13.

Chapter 10 of the Texas Civil Practice and Remedies Code states in part:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry: (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.... A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both. TEX. CIV. PRAC. & REM.CODE ANN. §§ 10.001, 10.004 (Vernon 2002)

It appears that by sanctioning Garcia for filing multiple similar lawsuits, the trial court was attempting to characterize Garcia as a vexatious litigant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 11.054 (Vernon 2002). The rules penalizing vexatious litigants apply only to plaintiffs, however, not attorneys. *See id.* Indeed, not even the plaintiff can be declared a vexatious litigant if he was represented by an attorney. *See Spiller v. Spiller*, 21 S.W.3d 451, 454 (Tex.App.-San Antonio 2000, no pet.).

Although we readily perceive the reasons for the trial court's frustration with Garcia's numerous unsuccessful attempts to sue Encore on behalf of his clients, neither rule 13 nor the Texas Civil Practice and Remedies Code supports the trial court's sanction order. Accordingly, we conclude the trial court abused its discretion in sanctioning Garcia for filing this lawsuit after filing other similar lawsuits.

Because Encore established Ramirez's claims were without merit as a matter of law, we affirm the trial court's summary judgment in favor of Encore. Encore did not establish, however, that this suit was groundless and brought in bad faith or for the purposes of harassment. Accordingly, we vacate the trial court's order sanctioning Garcia under Texas Rule of Civil Procedure 13 and chapter 10 of the Texas Civil Practice and Remedies Code. We also, for the reasons stated above, vacate the trial court's order sanctioning Garcia under Texas Rule of Civil Procedure 166(a)(h).